In Hyuk SUH, Plaintiff,

v.

Choon Sik YANG, Defendant.

and Related Counterclaim.

No. C96–20891 EAI.

United States District Court, N.D. California, San Jose Division.

Nov. 6, 1997.

---

Henry C. Bunsow, Denise M. De Mory, Orly Degani, Keker & Van Nest LLP, San Francisco, CA, Law Office of David M. Zeff, David M. Zeff, San Francisco, CA, for Plaintiff.

Donald N. MacIntosh, Flehr Hohbach Test Albritton & Herbert LLP, San Francisco, CA, Michael J. Raifsnider, San Francisco, CA, for Defendant.

ORDER DENYING CROSS–MOTIONS FOR SUMMARY JUDGMENT AND FINDING THAT "KUK SOOL" IS A GENERIC TERM THAT REFERS TO A TYPE OF MARTIAL ART

INFANTE, United States Magistrate Judge.

## I. INTRODUCTION

On September 29, 1997, Defendant Choon Sik Yang ("Yang") filed motions for (1) summary judgment on Count 1 and for partial summary judgment on Counts 3 and 4 of In Hyuk Suh's ("Suh") complaint on the grounds that Plaintiffs federally registered logo trademark is generic and that there is no likelihood of confusion between Plaintiffs and Defendant's graphic marks ("the Logo

Mark issue")[1]; and (2) summary judgment on Count 2 and partial summary judgment on Counts 3 and 4 on the grounds that the terms "KUK SOOL" and "KUK SOOL WON" are generic and that there is no likelihood of confusion between Plaintiff's marks and Defendant's use of the mark "INTERNATIONAL KUK SUL FEDERATION" ("the Word Mark issue"). On September 30, 1997, Plaintiff Suh filed a motion for summary judgment for all claims asserted in his complaint.[2] In response to this motion, Yang filed a counter-motion for summary judgment, contending that Suh's claims are barred by laches, and that his unfair competition claim is barred by the statute of limitations. For the reasons set forth below, both Plaintiff's and Defendant's motions for summary judgment are DENIED.

## II. BACKGROUND

The following facts are not disputed, except where otherwise noted.

In 1958, Plaintiff created a unique form of martial arts that he eventually named "Kuk Sool Won." Decl. Suh, ¶ 4. The Korea Kido Association, which is an organization established by the Korean government to oversee martial arts in Korea, recognizes Suh's exclusive right to use the term Kuk Sool Won. Decl. Suh, ¶ 5. Plaintiff offered martial arts instruction under the name "Kuk Sool Won" until 1974, when he emigrated to the United States to teach the martial art of Kuk Sool Won. Decl. Suh, ¶¶ 6, 7; Plaintiff's Exh. 7. Within two years of immigrating to the United States, Suh established schools in Illinois, Louisiana, Texas, and Arkansas to teach Kuk Sul. Decl. Suh, ¶ 8. Plaintiff has licensed 120 schools worldwide under the Kuk Sool trademark and logo. Suh Decl. ¶ 8.

In 1983, Suh registered a service mark described as a "fanciful design of a clutching fist surrounded by traditional weapons and a cloud-like perimeter" with Korean charac-

ters, which, translated into English, states "Korean Martial Arts Center." Plaintiff, exh. 1. Plaintiff was required to disclaim the right to use the design of the Korean words, apart from the mark as shown. *Id.* Plaintiff also attempted to register the service mark "Kuk Sool Won" for "instructional services relating to martial arts training" and "World Kuk Sool Association" ("WKSA") for "conducting schools competition (sic.) and demonstrations relating to martial arts" with the Patent and Trademark Office ("PTO") in 1981, 1994, and 1995 (Defendant's exh. 8–12). These applications were all denied as being "highly descriptive," "merely descriptive," and "generic." Defendant's exh. 14–17, 32, 43, 45. Plaintiff has registered the term Kuk Sool Won and his fist logo in over half the U.S. states (including California) and in Canada and England. Suh Decl. ¶ 13 and Plaintiff's exh. 3.

Defendant Yang began his martial arts study in 1958, and first studied Kuk Sool Won/Hap Ki Do in 1963. Yang Depo., pp. 9, 15. In 1965, Yang began studying Kuk Sool Won Hap Ki Do at a school that was operated by Plaintiff's older brother. Yang Depo., p. 23. Yang became an instructor in this school in 1970, and he continued teaching until he immigrated to the United States in 1979. Yang Depo. pp. 25, 42. Yang moved to the United States and worked as a Master in a school owned by another one of Plaintiff's brothers, which was affiliated with The World Kuk Sool Association. Yang Depo., p. 48. In 1980, Yang bought this school and continued to run it as the "Kuk Sool Won San Jose School" until 1987. Yang Depo., p. 48. In 1987, Yang and other branch masters became dissatisfied about the manner in which Plaintiff was dividing and managing various student fees and wanted Suh to resign from his position of Grand Master from the WKSA. Suh declined, and invited Yang to

1. At the November 3, 1997 hearing on these motions, counsel for both parties informed the court that the parties had resolved the logo mark issue, and that Plaintiff would dismiss Count 1 of the complaint and strike allegations in Counts 3 and 4 that assert infringement of Plaintiff's logo mark. Accordingly, Defendant's motion for summary judgment of Count 1 and partial summary judgment of Counts 3 and 4 based upon alleged

infringement of Plaintiff's federally registered trademark logo, and Plaintiff's motion for summary judgment to the extent it applies to the logo mark issue will not be discussed herein.

2. Plaintiff filed an amended motion for summary judgment on October 3, 1997.

leave the organization. Yang Depo. p. 130. Yang told Suh that he intended to start a different kuk sool organization or studio and ended his membership with the WKSA. Yang Depo., p. 130. Yang continued to run his martial arts studio, and took the name International Kuk Sul Federation. Yang Depo., p. 135. Yang testified that he "personally used the name of Yang's Kuk Sul Academy" as well as "Yang's Kuk Sul" in 1988. *Id.* At some point, Defendant adopted a graphic "logo" in connection with his business. In 1996, and after Plaintiff's counsel demanded that Yang cease and desist the use of his original logo, Defendant designed a second graphic logo. Yang Depo., p. 169:14–23.

Defendant testified that he began advertising under the name "International Kuk Sul Federation" in the phone book in or about 1990. Yang Depo., p. 136. Yang states that there are four licensees of the International Kuk Sul Federation located in Geneva City, Cleveland, Paradise, and Guadalajara, Mexico. Yang Depo., p. 118. Yang also testified that his organization is "in a sister relationship with two organizations in Korea, called the Dae Han Kuk Sul Association and the International Kuk Sul Association." Yang Depo., p. 119.

Suh states that he first learned in 1995 that Yang was using the name "International Kuk Sul Federation," although he does not identify the circumstances under which he became aware of this use. Declaration of Suh in Support of Plaintiff's Opposition to Defendant's Counter–Motion for Summary Judgment, ¶ 2. In August 1995, Yang received a letter from Plaintiff's counsel demanding, among other things, that Yang cease all use of the term "KUK SUL," Yang's Fist Logo Design, or any other variation of Suh's marks. Declaration of Narayanamurthi, Exh. 15.

On September 12, 1996, Plaintiff filed a complaint against Defendant in the Superior Court of Santa Clara County alleging claims for (1) Service and Trademark Infringement, pursuant to 15 U.S.C. § 1114(1)(a), based upon Defendant's use of the Yang Fist Logo; (2) Violation of the Lanham Act, pursuant to 15 U.S.C. § 1125(a), alleging that Defendant's actions of advertising his services as instruction ·in Kuk Sool falsely designates himself as the source of origin of the martial arts system described in the Kuk Sool Won service mark, and that Yang's marketing and selling products under the Kuk Sul name and Yang Fist Logo causes confusion as to the origin of the Plaintiff's martial arts; (3) Service Mark and Trademark Infringement, pursuant to Cal. Bus. & Prof Co. § 14320 and the common law, based upon Defendant's use of the term Kuk Sul and the Yang Fist Logo; and (4) Unfair Competition, pursuant to Cal. Bus. & Prof C. §§ 17200 et seq. and common law, for wrongful use and dilution of Plaintiff's word and logo service marks.

Defendant removed this case to federal court on October 24, 1996.

### III. *SUMMARY JUDGMENT STANDARDS*

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file,·together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c), Fed.R.Civ.P. The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). However, the moving party has no burden to negate or disprove matters on which the non-moving party will have the ·burden of proof at trial. The moving party need only point· out to the court that there is an absence of evidence to support the non-moving party's case. *Celotex,* 477 U.S. at 325, 106 S.Ct. at 2554.

The burden then shifts to the non-moving party to "designate 'specific facts showing that there is a genuine issue for trial.' " *Id.* at 324, 106 S.Ct. at 2553 (quoting Rule 56(e)). To carry this burden, the non-moving party must "do more than simply ·show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). "The mere existence of a scintilla of evidence ... will be insufficient; there must be evidence on which the jury could reason-

ably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). Evidence that "is merely colorable, or is not significantly probative," is not sufficient to avoid summary judgment. *Id.* at 249–250, 106 S.Ct. at 2511.

Summary judgment cannot be granted where a genuine dispute exists as to any material fact. Rule 56(c), F.R.Civ.P. A "material" fact is one which might affect the outcome of the case under the applicable law. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510. A dispute about a material fact is genuine if a reasonable jury could return a verdict for the non-moving party. *Id.* In deciding a motion for summary judgment, the evidence is viewed in the light most favorable to the non-moving party, and all justifiable inferences are to be drawn in its favor. *Id.* at 255, 106 S.Ct. at 2513. Moreover, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge [when] he is ruling on a motion for summary judgment." *Id.*

## IV. *DISCUSSION*

Although the parties bring three separate motions for summary judgment, two of the motions share the following common issues: 1) whether the terms "Kuk Sool" and "Kook Sool Won" are generic, and thus are not protected under federal and state trademark law; and 2) whether there is a substantial likelihood of confusion between the parties' service marks. Defendant's countermotion for summary judgment on grounds of laches and running of the statute of limitations on Plaintiffs unfair competition claim will be discussed separately.

### A. ISSUES OF MATERIAL FACT EXIST AS TO WHETHER THE TERM "KUK SOOL WON" IS GENERIC. HOWEVER, THE TERM "KUK SOOL" HAS BECOME GENERIC THROUGH PUBLIC USE AND IS NOT PROTECTED UNDER PRINCIPLES OF TRADEMARK LAW.

Defendant Yang seeks summary judgment in his favor of Count 2 and partial summary judgment in his favor on Counts 3 and 4, contending that the term "Kuk Sool Won" or "Kuk Sool" are generic and that Plaintiff has promoted kuk sool as a type of martial art. Plaintiff responds by attacking Defendant's evidence on foundation and hearsay grounds, asserts that Defendant has the burden of proof in showing that Plaintiff's word marks have become generic through public use, and contends that the only admissible evidence before the court establishes that Kuk Sool and Kuk Sool Won are arbitrary terms subject to trademark protection.

1. *Plaintiff has the burden of establishing that "kuk sool" and "Kuk Sool Won" are not generic terms, However, Defendant has the burden of establishing that the terms "KUK SOOL" and "KUK SOOL WON" have become generic through public use.*

■ The first issue of dispute between the parties is which party has the burden of establishing that "Kuk Sool" and "Kuk Sool Won" are or are not subject to trademark protection.

■ As a general rule, there is a presumption that service marks are generic if they are not federally registered, and that the person asserting trademark protection of service marks that are not federally registered has the burden of establishing the service marks are not generic once the defendant has raised the defense of genericness. See, e.g., *Bath & Body Works, Inc. v. Luzier Personalized Cosmetics, Inc.*, 76 F.3d 743, 748 (6th Cir.1996) (citing J.T. McCarthy, McCarthy on Trademarks and Unfair Competition, § 12.02[7][b] (3d ed.1993)). However, the Second Circuit has held that where the public has come to use an invented or coined term as a generic name after use of the term as a trademark, the burden is upon the alleged infringer to show that an unregistered term has become generic. *The Murphy Door Bed Co., Inc. v. Interior Sleep Systems, Inc.*, 874 F.2d 95, 101 (2d Cir.1989). The Ninth Circuit has not addressed this issue, although a California Northern District Court recognized this presumption in *Intel Corp. v. Advanced Micro Devices*, 756 F.Supp. 1292 (N.D.Cal.1991). While Defen-

dant does not introduce any evidence to suggest that the term "kuk sool" or "Kuk Sool Won" was in common usage prior to Plaintiff's use of these terms, he does contend that the terms "kuk sool" and "Kuk Sool Won" were generic when adopted by Plaintiff since the literal translation of kuk sool and Kuk Sool Won is "National Martial Arts" and "National Martial Arts Association," respectively. See, e.g., SD Decl., exh. 16. Based upon this allegation, Defendant is alleging that the service marks were generic when coined, even though he does not dispute that Plaintiff was the first person to use these terms in connection with a martial art.

In following the general presumptions set forth above, Plaintiff Suh has the burden of showing that the terms "kuk sool" and "Kuk Sool Won" were not generic when adopted by him, and Defendant Yang has the burden of showing that the terms later became generic through public use.

This issue is largely academic, however, since Defendant has presented sufficient evidence to satisfy both burdens, as explained below.

### 2. Classification of Trademark Terms

Before examining the evidence presented by the parties, it is useful to set forth the general rules on the classification of service and trademarks. As adeptly explained by the court in *Blinded Veterans Ass'n v. Blinded American Veterans Foundation*, 872 F.2d 1035, 1040, 1041(D.C.Cir.1989):

The existence and extent of trademark protection for a particular term depends on that term's inherent distinctiveness. Courts have identified four general categories of terms: (1) generic, (2) descriptive, (3) suggestive, and (4) arbitrary or fanciful. These groupings are not airtight, however. As the Fifth Circuit cautioned:

These categories, like the tones in a spectrum, tend to blur at the edges and merge together. The labels are more advisory than definitional, more like guidelines than pigeonholes. Not surprisingly, they are somewhat difficult to articulate and to apply. *Zatarains, Inc. v. Oak Grove Smokehouse, Inc.*, 698 F.2d 786, 790 (5th Cir.1983). The rough contours of the

categories, however, can be drawn from the array of trademark controversies in which courts have endeavored to characterize or classify terms.

The first category consists of "generic" terms. A generic term is one commonly used to denote a product or other item or entity, one that indicates the thing itself, rather than any particular feature or exemplification of it. See *Liquid Controls Corp. v. Liquid Control Corp.*, 802 F.2d 934, 936 (7th Cir.1986); accord *Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4, 9 (2d Cir.1976). A generic term does not merely identify a particular characteristic or quality of some thing; it "connotes the 'basic nature'" of that thing. [cite omitted]. Because a generic term denotes the thing itself, it cannot be appropriated by one party from the public domain; it therefore is not afforded trademark protection even if it becomes associated with only one source. See, e.g., *National Conf. of Bar Examiners v. Multistate Legal Studies*, 692 F.2d 478, 487 (7th Cir.1982), cert. denied, 464 U.S. 814, 104 S.Ct. 69, 78 L.Ed.2d 83 (1983); *Abercrombie & Fitch*, 537 F.2d at 9.

Descriptive terms, which compose the second category, directly describe a particular quality, function, or characteristic of a product or service. Because descriptive terms are thus not inherently distinctive, they acquire trademark protection only upon proof of secondary meaning—i.e., upon proof that the public recognizes only one source of the product or service. See *Kellogg Co. v. National Biscuit Co.*, 305 U.S. 111, 118, 59 S.Ct. 109, 113, 83 L.Ed. 73 (1938) (stating that a term has acquired secondary meaning when "the primary significance of the term in the minds of the consuming public is not the product but the producer"); see generally J. MCCARTHY, TRADEMARKS AND UNFAIR COMPETITION § 15:2 at 661–65 (2d ed.1984) [hereafter MCCARTHY] (defining secondary meaning).

The third category consists of "suggestive" terms. These are terms that do not directly describe a product or service, but suggest some quality of the article. As

one court usefully stated: A term is suggestive if it requires imagination, thought and perception to reach a conclusion as to the nature of goods. A term is descriptive if it forthwith conveys an immediate idea of the ingredients, qualities or characteristics of the goods. *Stix Prods., Inc. v. United Merchants & Mfrs., Inc.*, 295 F.Supp. 479, 488 (S.D.N.Y.1968); see also *General Shoe Corp. v. Rosen*, 111 F.2d 95, 98 (4th Cir.) (suggestive terms "shed some light upon the characteristics of the good" only "through an effort of the imagination on the part of the observer"), reh'g denied, 112 F.2d 561 (1940) (per curiam). Because suggestive terms only indirectly convey an impression of the products or services, they are considered inherently distinctive; suggestive terms therefore are protectable without proof of secondary meaning. See MCCARTHY § 11:20 at 488.

"Arbitrary" and "fanciful" terms compose the fourth category. An arbitrary term is one which is commonly used in the language, but has no intrinsic connection to the product. A fanciful term is one coined for the purpose of serving as a trademark. Because arbitrary and fanciful terms are inherently distinctive, they are protectable without proof of secondary meaning. See MCCARTHY § 11:2 at 435.

■ In categorizing foreign words, "It is a well established principle of trademark law in this country that the foreign equivalent of a merely descriptive English word [meaning "generic"] is no more registerable than the English word itself despite the fact that the foreign term may not be commonly known to the public. That is, normally no distinction can be made between English terms and their foreign equivalents with respect to registerability." [cites omitted.] *In re Optica International*, 196 U.S.P.Q. 775, 777, 1977 WL 22617 (TTAB 1977) (see cases cited therein.). An exception to this rule applies for "foreign expressions that even those familiar with the language will not translate, accepting the term as it is, and in situations arising in the marketplace where it is unfeasible or even unlikely that purchasers will translate the brand names or labels appearing on products as they are encountered in a marketing environment." *Id.*

### 3. Analysis of "kuk Sool" and "Kuk Sool Won"

■ Neither kuk Sool nor Kuk Sool Won could be considered anything but "descriptive" or "generic." The PTO translated the term "kuk sool" as meaning "traditional martial arts," or "national martial arts." See, e.g., SD Decl., exh. 46; 58; Yang Depo., p. 34:8–13. Plaintiffs own advertisements submitted in support of his motion for summary judgment state that the literal translation of "kuk Sool" is Korean Traditional Martial Arts. The Declaration of Albert Kim states that " 'Kuk Sool' is a proper noun that signifies a particular discipline or brand" (¶ 9), but concedes that "Kuk Sool Won" "is nonetheless indicative of the *nature* of the business it is associated with, namely a martial arts instruction entity." (emphasis added.) Decl. Suh, exh. 10. Kim states that " 'Kuk Sool Won' as a name, thus appears to suggest what the *general nature* of what Kuk Sool Won's business is" which is "a national-type (skill) or (technique) or (art)." *Id.* at ¶ 5.

These terms, as described by Plaintiffs expert, are descriptive of Plaintiff's services. It cannot be said that the terms, by themselves and without consideration of any other evidence (i.e., evidence of public understanding of the terms) are generic. Based upon both parties' evidence, there is some question of material fact of whether the words "Kuk Sool" are generic and incapable of trademark protection, or whether they are descriptive and capable of trademark protection upon a showing of secondary meaning.[3]

Nonetheless, Defendant has set forth sufficient evidence to show that the term "kuk sool," is now understood by a "substantial majority of the public" to refer to a type of martial arts, and is therefore generic. Plaintiff, on the other hand, has not introduced any material evidence that would tend to

---

**3.** Defendant has not challenged the terms kuk sool and Kuk Sool Won based upon lack of secondary meaning.

show that "kuk sool" is understood by the public to denote a single source of martial art instructional services.

As stated above, "A generic term is one that refers to the genus of which the particular product is a species." *Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.,* 469 U.S. 189, 194, 105 S.Ct. 658, 661, 83 L.Ed.2d 582 (1985). In *Committee for Idaho's High Desert, Inc. v. Yost,* 92 F.3d 814, 821–822 (9th Cir.1996), the Ninth Circuit explained: "The Lanham Act sets out the test for genericness: 'The primary significance of the ... mark to the relevant public ... shall be the test for determining whether the ... mark has become the generic name of goods or services on or in connection with which it has been used.' 15 U.S.C. § 1064(3). The Federal Circuit has interpreted this statement as codifying 'the time-honored test for genericness articulated by Judge Learned Hand ...: 'What do the buyers understand by the word for whose use the parties are contending?'" *Magic Wand, Inc. v. RDB, Inc.,* 940 F.2d 638, 640 (Fed.Cir.1991). The test is thus one of meaning to the usual buyer or other relevant members of the public. *H. Marvin Ginn Corp. v. International Ass'n of Fire Chiefs, Inc.,* 782 F.2d 987, 989 (Fed.Cir. 1986).

Another useful explanation of the difference between generic and descriptive terms was set forth in *PaperCutter, Inc. v. Fay's Drug Co. Inc.,* 900 F.2d 558, 562 (2d Cir. 1990):

As between descriptive and generic terms, conventional wisdom holds that generic terms, which refer to the general class or category of the product, are so useful to businesses selling the same product that no amount of money poured into promoting customers' association of generic terms with a particular source can justify "depriv[ing] competing manufacturers of the product of the right to call an article by its name." *Abercrombie & Fitch,* 537

F.2d at 9 (citation omitted). As to descriptive terms, "[a] person cannot, by mere adoption and use, obtain exclusive rights in words that describe the attributes of the goods, services, or business to which the words are applied" for the simple reasons that prospective purchasers are likely to understand such terms in their descriptive sense rather than as an indication of source and that the terms are likely to be useful to competing manufacturers. See Restatement (Third) of Unfair Competition § 14 comment a, at 57 (Tent. Draft No. 2 1990).

■ To show that a term has come to symbolize the general class or category of the product to the public, "evidence of the public's understanding of the term [at issue] may be obtained from any competent source, such as purchaser testimony, consumer surveys, listings in dictionaries, trade journals, newspapers, and other publications." *In re Merrill Lynch,* 828 F.2d 1567, 1570 (Fed.Cir. 1987).[4]

In support of its contention that kuk sool is generic, Defendant has introduced evidence of the PTO's refusal to register both the terms "kuk sool" and "Kuk Sool Won." While the PTO's refusal to register a trademark term is not conclusive, it is entitled to "great weight." *Syntex Laboratories, Inc. v. Norwich Pharmacal Co.,* 437 F.2d 566, 569 (2d Cir.1971); *The Murphy Door Bed Co., Inc. v. Interior Sleep Systems, Inc.,* 874 F.2d 95, 101 (2d Cir.1989). In determining that the term "kuk sool" was used in a generic sense, the PTO referred to the dictionary definition of "kuk sool" as provided in the Tuttle Dictionary of Martial Arts of Korea, defining "Kuk Sool" as "a martial art that combines Hapkido-like joint-locks and throws with Taekwondo-like kicks and numerous other weapons." SD Decl., exh. 32. The PTO also noted that "kuk sool" had been used in a generic sense to denote a type of martial art in both Plain-

**4.** Some courts have expressed a preference for direct consumer evidence, such as consumer surveys and testimony, over other forms of evidence, noting that "'Consumer surveys have become almost de rigueur in litigation over genericness. Judges are now used to survey evidence and often expect to receive evidentiary assistance by surveys in resolving generic disputes.' McCarthy, § 12:2 at 529–30." *Berner International Corp. v. Mars Sales Co.,* 987 F.2d 975, 982 (3rd Cir.1993). However, neither party has introduced consumer survey evidence, although such evidence is not required.

tiff's advertisements and magazine articles. SD Decl., exh. 43.

Defendant also includes magazine articles in which "kuk sool won" is defined as a martial art along with "Karate, Jujutsu, Kenpo, Taekwondo, Kickboxing, and Kungfu" (SD Decl., exh. 26; exh. 41; exh. 48, exh. 49.); textbooks where Kuk Sool is identified as a martial art, rather than a "method of instructional services" (SD Decl., exh. 28); and advertisements for martial art instruction for various schools (both schools licensed by WKSA and others) that identify kuk sool as a martial art. SD Decl., exh. 20; exh. 47. This type of evidence has been deemed sufficient in other cases to demonstrate the genericness of a term presumed to be protected by trademark law. See, e.g., *Murphy Bed, supra.*

Plaintiff's own exhibits submitted in support of his position that the term "kuk sool" denotes a single source of martial art instruction services (as opposed to a particular class or type of martial art) fail to raise an issue of material fact that this term is not generic, and, in some instances, further supports Defendant's position that "kuk sool" is generic. However, Plaintiff does present sufficient evidence to raise a material fact regarding trademark protection of the term "Kuk Sool Won" and "Kuk Sool Won Association."

Plaintiff attaches as evidence his own declaration asserting that Suh coined the term Kuk Sool and Kuk Sool Won, that he brought these terms to the United States, and that he has used these terms continuously. However, this evidence does not address the issue of how the *public* perceives the term Kuk Sool. He also provides service mark registrations of the term "Kuk Sool Won," obtained from several state entities, his license agreements with numerous schools, and an excerpt from a book identifying Plaintiff as the founder of Kuk Sool Won and the World Kook Sool Association. Plaintiff introduces pictures of a few products to which the term "Kuk Sool Won" and the Suh Fist Logo are affixed in concert.

Suh's Exhibit 9 also contains several advertisements where "Kuk Sool Won" is used with the "TM" designation, although the term "kuk sool" is never so designated and is (again) used to identify a *type* of martial art. Finally, the affidavit of Albert Kim asserts that "Kuk Sool Won" is understood in the Korean language as being a proper noun (i.e., a name of an organization) which is "connected with some sort of national-type (skill) or (technique) or (art)." Kim Decl., ¶ 5. While Plaintiff's exhibits would have a tendency to show that "Kuk Sool Won" is understood by the public to identify a particular institution providing Kuk Sool instruction, there is little or no evidence from which a reasonable trier of fact could find that kuk sool is anything other than a type or class of Korean martial art. Albert Kim's declaration as to the meaning of "kuk Sool" is also vague, stating that " 'Kuk Sool' is a proper noun that signifies a particular discipline or brand." *Id.*[5]

Thus, while material issues of fact exist as to whether "Kuk Sool Won" identifies a single source of instruction of the martial art of "kuk sool," no issue of material fact exists as to the public perception of the term "kuk sool" as a genus or type of martial art, just as karate, taekwondo, and kung-fu are recognized as classes or types of martial arts. Therefore, Plaintiff cannot prevent other martial art instructors from using the term "kuk sool" to identify instruction of this type of martial art.

■ The fact that "kuk sool" is a generic term for a type of martial art does not cause the term "Kuk Sool Won" to similarly be classified as generic, however. In evaluating the genericness of a name, the court must examine the name as a whole, rather than evaluating its constitute parts individually. *Committee for Idaho's High Desert, Inc. v. Yost,* 92 F.3d 814, 821–822 (9th Cir.1996).

4. *Likelihood of Confusion Between the Terms "World Kuk Sool Association" and "International Kuk Sul Federation"*

■ The determination that "kuk sool" is a generic term that identifies a type of mar-

---

5. See, e.g., McCarthy, *supra,* noting that "[a] rule of thumb sometimes forwarded as distinguishing a generic name from a descriptive term is that *generic names are nouns* and descriptive terms are adjectives." (emphasis added.) However, McCarthy also goes on the identify several shortcomings in this general rule. § 12.10.

tial art rather than a single source of martial art instruction does not resolve the issue of whether Defendant's use of the service name "International Kuk Sul Federation" is likely to cause consumer confusion with respect to Plaintiff's use of the service name "World Kuk Sool Association," or whether Yang's use of "International Kuk Sul Federation" unfairly competes with Plaintiff.

Both parties agree that the eight factor test identified in *AMF, Inc. v. Sleekcraft Boats,* 599 F.2d 341, 350 (9th Cir.1979), should be examined to determine whether Defendant's use of International Kuk Sul Federation is likely to cause consumer confusion. In *AMF*, the Ninth Circuit identified the following non-exhaustive list as relevant factors to consider in determining likelihood of consumer confusion: "1. strength of the mark; 2. proximity of the goods; 3. similarity of the marks; 4. evidence of actual confusion; 5. marketing channels used; 6. type of goods and the degree of care likely to be exercised by the purchaser; 7. defendant's intent in selecting the mark; and 8. likelihood of expansion of the product lines."

While the parties agree that Plaintiff Suh has no evidence of actual confusion, several issues of material fact do exist regarding a number of these factors. Additionally, there is insufficient evidence on the record from which the court could conclude, as a matter of law, that concurrent use of Plaintiff's and Defendant's service names are (or are not) likely to cause consumer confusion.

First, there is conflicting evidence regarding the strength of Plaintiff's mark. While "World Kuk Sool Association" is descriptive of the business in which Plaintiff is engaged (i.e., schools that teach the kuk sool martial art), and this service mark must have acquired a secondary meaning to be protected by trademark law, Defendant does not challenge the mark based upon a lack of secondary meaning. Moreover, Plaintiff has introduced evidence of extensive licensing and advertising of the World Kuk Sool Association name from which a reasonable trier of fact could determine secondary meaning.

Second, World Kuk Sool Association and International Kuk Sul Federation are not so similar or dissimilar that it can be determined, as a matter of law, that these marks are likely to cause consumer confusion. While the words sound different when spoken, the meaning of "World Kuk Sool Association" and "International Kuk Sul Federation" are essentially identical. The order of the words are also identical (i.e., World/International is the first word, Kuk Sool/Sul are the middle words, and Association/Federation are the last words, as opposed to, for example, the service mark "Federation of International Kuk Sool"). The issue of Defendant's intent in adopting the service mark "International Kuk Sul Federation" is a state-of-mind question that is disputed by both parties. Defendant's denial of a wrongful intent is probative evidence that he did not intend to infringe upon Plaintiff's service mark. However, an intent to wrongfully benefit from Plaintiffs hard work of establishing an extensive network of kuk sool schools could be inferred from the fact that Defendant knew that Plaintiff had adopted the service name "World Kuk Sool Association" and that this name had a strong reputation in the field of martial arts instruction. A trier of fact could reasonably find that Defendant adopted a service name that was arguably similar to Plaintiff's service name in order to unfairly compete with and benefit from consumer confusion.

Therefore, both parties' respective motions and oppositions raise the following issues of material facts: (1) whether Kuk Sool Won is generic or is protected under federal and state trademark law as having acquired a secondary meaning, (2) whether there exists a likelihood of confusion between the service marks World Kuk Sool Association and International Kuk Sul Federation, and (3) whether Defendant's use of the term International Kuk Sul Federation unfairly competes with Plaintiff under the unfair competition torts of "passing off" or trademark dilution. While the court does find that the undisputed facts show that kuk sool is a generic term for a type of martial art, this finding does not affect the disposition of either party's motions for summary judgment and/or partial summary judgment.

## B. ISSUES OF MATERIAL FACT EXIST OF WHETHER PLAINTIFF WAS AWARE OF DEFENDANT'S USE OF THE TRADEMARK PRIOR TO 1995.

■ Defendant also brings a counter-motion for summary judgment as against Plaintiffs trademark claims, asserting that Plaintiff and Defendant co-existed in the Bay Area for nine years, that Plaintiff knew that Defendant planned to continue instructing in the martial arts in which Defendant was trained [6], that Defendant began advertising his new business in 1988 immediately after severing his affiliation with Plaintiff, and that Plaintiff's claim that he did not know about Defendant's use of his word mark is "dubious." Plaintiff responds, without explanation, that he first learned of Defendant's infringing use of the name "International Kuk Sul Federation" in 1995, and promptly thereafter notified Defendant of his infringing use.

"Under § 32 of the Lanham Act, the owner of a trademark is protected from unauthorized uses that are "likely to cause confusion, or to cause mistake, or to deceive." § 1114(1)(a)." Section 33 of the Lanham Act grants several statutory and equitable defenses to an alleged trademark infringer, including laches. 15 U.S.C. § 1115. *San Francisco Arts & Athletics, Inc. v. U.S. Olympic Committee*, 483 U.S. 522, 531, 107 S.Ct. 2971, 2978, 97 L.Ed.2d 427 (1987).

■ To invoke the laches defense, an alleged infringer must prove the following two factors: "1. the plaintiff delayed filing suit for an unreasonable and inexcusable length of time from the time the plaintiff knew or reasonably should have known of its claim against the defendant, and 2. the delay operated to the prejudice or injury of the defendant. [cites omitted] The length of time which may be deemed unreasonable has no fixed boundaries but rather depends on the circumstances." *A.C. Aukerman Co. v. R.L. Chaides Const. Co.*, 960 F.2d 1020, 1032 (Fed. Cir.1992). In deciding whether the laches defense exists, the following factors are weighed by the court: "the strength of plaintiff's trademark; plaintiff's ·diligence in enforcing the mark; the harm to plaintiff if relief is denied; whether defendant acted in good faith ignorance of plaintiff's rights; competition between the parties; and the harm suffered by defendant because of plaintiff's delay." McCarthy, *supra.*, vol. 4, § 31:1, citing *Clamp Mfg. Co. v. Enco Mfg. Co.*, 870 F.2d 512 (9th Cir.1989), cert. denied, 493 U.S. 872, 110 S.Ct. 202, 107 L.Ed.2d 155 (1989). "Since the equitable defense of laches requires a balancing of the equities of the parties and the public, it usually requires a full trial on the merits, not disposition on summary judgment." McCarthy § 31.1.

In this case, Defendant's burden of showing Plaintiff's actual or constructive knowledge is not satisfied by the record. First, as stated above, the Request for Admission to which Plaintiff refers simply asks Plaintiff to admit "that since at least 1987 YANG continued instructing martial arts after the termination of his involvement in the World Kuk Sool Association," not that Plaintiff knew that Yang would instruct in Kuk Sool or adopt a name and logo similar to Plaintiff's. Although it is probably reasonable to assume that Defendant would continue to teach kuk sool, this fact alone would not have placed Plaintiff on notice that Defendant would use a similar service name. Defendant's contention that he "advertised" his new business in 1988 immediately after severing his affiliation with Plaintiff does not establish that he advertised under the International Kuk Sul Federation name at this time. In fact, Yang's deposition testimony is contradictory to this contention since he stated that he began advertising under the name "International Kuk Sul Federation" in the phone book

---

6. In support of this contention, Yang refers to Suh's response to Defendant's Request for Admission No. 1, which states "Admit that you have known since at least 1987 that YANG continued instructing martial arts after the termination of his involvement in the World Kuk Sool Association ("WKSA")." Plaintiff admits this fact, but adds "after termination of Yang's involvement with WKSA, plaintiff assumed that Yang was teaching his own style of martial art, developed by him, under his own name." See, Declaration of Lisa Marie Schull in Support of Defendant's Rebuttal to Plaintiff's Objections and in Support of Defendant's Reply Regarding Summary Judgment, exh. 5.

in or about 1990. Yang Depo., p. 136. Moreover, Plaintiff's World Kuk Sool Association Headquarters was located in San Francisco for an indeterminate period of time, and was then moved to Texas. The deposition testimony referenced by Defendant only establishes that In Hyuk Suh's headquarters was in San Francisco from 1979 to 1987. Declaration of Steven B. Dennison in Support of Defendant's Opposition to Plaintiff's Amended Motion for Summary Judgment and Counter–Motion for Summary Judgment on Defenses of Laches and Statute of Limitations, Exh. 3, p. 52. Finally, there is insufficient evidence from which the court could infer that Suh or an agent of Suh would have seen any advertisements placed by Yang.

As discussed in an earlier section of this order, disputes of material fact continue to exist as to the strength of Plaintiff's word marks and Defendant's intent in adopting service marks that are arguably similar to Plaintiff's.

Therefore, Defendant's motion for summary judgment on Plaintiff's trademark claim on the basis of laches is DENIED.

## C. PLAINTIFF'S UNFAIR COMPETITION CLAIM IS NOT BARRED BY THE STATUTE OF LIMITATIONS

■ Defendant contends that Plaintiff's claim for unfair competition is barred by the four year statute of limitations, set forth in Section 17208, California Business and Professions Code. Defendant asserts that "Plaintiff contends, and Defendant agrees, that Defendant began using his complained of marks in 1987, shortly after leaving his affiliation with WKSA" and "the plain, unrefuted evidence shows that Defendant began advertising his business as INTERNATIONAL KUK SUL FEDERATION and used his original logo mark in conjunction with those advertisements on or about that time." Defendant's Memorandum in Opposition to

Plaintiff's Motion & Counter–Motion for Summary Judgment, p. 20. Defendant also asserts that there is no evidence of affirmative conduct on the part of Yang that would, under the circumstances of the case, lead a reasonable person to believe that Plaintiff did not have a claim for relief.

Plaintiff replies that his unfair competition claim is timely "because defendant's continuing use of confusingly similar designations constitutes a continuing wrong that delays accrual of the cause of action."

California Business & Professions Code Section 17208 provides that "[a]ny action to enforce any cause of action [for unfair competition] shall be commenced within four years after the cause of action accrued." The only court that has considered the issue has determined that the "discovery rule," which delays accrual of certain causes of action until actual or constructive knowledge of the facts giving rise to the claim, does not apply to unfair competition claims. *Stutz Motor Car of America, Inc. v. Reebok Intern., Ltd.,* 909 F.Supp. 1353 (C.D.Cal.1995), aff'd, 113 F.3d 1258 (1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 169, 139 L.Ed.2d 112.[7] The *Stutz* court determined that the unfair competition limitations statute "begins to run when [the] cause of action accrues, irrespective of whether plaintiff knew of its accrual, unless plaintiff can successfully invoke the equitable tolling doctrine." *Id.* at 1363.[8]

Assuming, *arguendo,* that *Stutz* correctly interprets Section 17208, Plaintiff's claim for unfair competition would not be barred by the four year statute of limitations since the alleged wrongs (i.e., the wrongful use and dilution of Suh's service marks) are multiple, continuous acts, and some of these acts have occurred within the limitations period.

■ The *Stutz* case is factually distinguishable from the instant litigation. In

---

7. We have not found any California cases holding that the "delayed discovery" rule does or does not apply to California unfair competition claims.

8. The doctrine of equitable tolling suspends the running of the statute of limitations "if the plaintiff proves that the defendant fraudulently concealed the existence of the cause of action so that

the plaintiff, acting as a reasonable person, did not know of its existence." *Hennegan v. Pacifico Creative Service, Inc.,* 787 F.2d 1299, 1302 (9th Cir.1986). Plaintiff Suh has not alleged or identified specific facts showing that Defendant Yang engaged in affirmative conduct that concealed his use of the service marks.

*Stutz*, the plaintiff's unfair competition claim was based upon a single, irrevocable wrong (i.e., misappropriation of a single trade secret), as opposed to a series of multiple wrongs. *Stutz, supra,* 909 F.Supp. at 1363. As a result of this factual finding, the *Stutz* court determined that the statute of limitations for the plaintiff's unfair competition claim based upon the theft of a trade secret accrued four years after the alleged wrongful act. In this case, each allegedly infringing display of Defendant's service name on products, advertisements, etc., could create a separate cause of action for unfair competition and trademark infringement. See, for example, *Restatement (Third) of Unfair Competition,* § 31 (1995); Callman, *Unfair Competition, Trademarks and Monopolies* (4th ed.) § 22.30 (trademark infringement is typically a continuing wrong) and *Derrick Manufacturing Corp. v. Southwestern Wire Cloth,* 934 F.Supp. 796 (S.D.Tex.1996) (construing a similar statute of limitations for an unfair competition claim).

Therefore, Defendant's counter-motion for summary judgment based upon the running of the statute of limitations for unfair competition is DENIED.[9]

## V. CONCLUSION

For the reasons set forth above, IT IS HEREBY ORDERED that:

(1) Defendant Yang's motions for summary judgment based upon the genericness of Suh's word marks and the absence of the likelihood of consumer confusion are DENIED.

(2) Defendant Yang's counter-motion for summary judgment based upon the affirmative defenses of laches and the running of the statute of limitations on the claim of unfair competition is DENIED.

(3) Plaintiff Suh's motion for summary judgment in his favor of all claims asserted in the complaint is DENIED.

(4) Since no genuine issues of material fact exists as to the classification of. the term "kuk sool," which is understood by potential

customers to designate a class or type of Korean martial art, partial summary adjudication is GRANTED, pursuant to Rule 56(d), F.R.Civ.P., that the term "kuk sool" is generic.

IT IS SO ORDERED.

---

9. The parties have not raised the issue of whether recovery for allegedly infringing acts occurring *prior* to the four year statute of limitations is

barred. Therefore, the court will not render a decision on this issue.