OMEGA NUTRITION U.S.A. INC., a Washington corporation, Plaintiff,

v.

SPECTRUM MARKETING, INC., a California corporation; Jethren Phillips, an individual; R.A. Moerman, an individual; and, Udo Erasmus, an individual, Defendants.

SPECTRUM MARKETING, INC., a California corporation, Counterclaimant,

v.

OMEGA NUTRITION U.S.A. INC., a Washington corporation; Omega Nutrition Inc., a Canadian corporation; Omega Nutrition Canada Inc., a Canadian corporation; Fred Gornall, an individual; Robert Walberg, an individual; and Robert Gaffney, an individual, Counterdefendants.

No. C–90–0681 SAW.

United States District Court, N.D. California.

Jan. 23, 1991.

**436**

Neil Greenstein, Baker & McKenzie, Palo Alto, Cal., for plaintiff.

Townsend & Townsend, Henry Bunsow and Susan Spaeth, San Francisco, Cal., for defendants.

## MEMORANDUM AND ORDER

WEIGEL, District Judge.

This case arises out of plaintiff/counterdefendant Omega Nutrition U.S.A., Inc.'s ("Omega USA") and defendant/counterclaimant Spectrum Marketing, Inc.'s ("Spectrum") competing claims of trademark infringement.[1] The mark in dispute is the "Veg–Omega–3," which both parties have used to identify their competing bottled flax seed oil products. On August 7, 1990, Spectrum was issued a United States registration for the Veg–Omega–3 mark,

Reg. No. 1,609,232, and now requests a preliminary injunction enjoining the use of this mark by Omega USA, Omega Canada I, Omega Canada II, and the individual counterdefendants. A brief chronological background is essential to determining the validity of this request.

## I. BACKGROUND

Omega Canada I is a Canadian corporation formed in April 1987 for the purpose of manufacturing in Canada, and marketing world-wide, flax seed oil products. Shortly after its formation, Omega Canada I entered into an oral distribution agreement with Spectrum, a California corporation, whereby Spectrum agreed to become Omega Canada I's exclusive distributor in the health food market in the United States for flax seed oil manufactured and bottled by Omega Canada I in Canada. The first shipment of flax seed oil was made by Omega Canada I in September or October of 1987.[2] The labels affixed to the bottles of flax seed oil bore the disputed mark "Veg–Omega–3" and identified Spectrum as the distributor of the product "under license to" Omega Canada I. The label denominated the oil a "Product of Canada."[3]

After March 1988, the prior business relationship between Spectrum and Omega Canada I was replaced by a new relationship between Spectrum and Alpha Nutrition Inc. ("Alpha"), a sole proprietorship formed in the State of Washington at Omega Canada I's direction. Omega Canada I transferred its rights to the Veg–Omega–3 mark to Alpha, which replaced Omega Canada I as manufacturer of the flax seed oil.

---

1. Omega USA brought the complaint for trademark infringement against Spectrum. Spectrum, in turn, counterclaimed for trademark infringement against Omega USA. In this counterclaim, Spectrum also included Omega Nutrition, Inc. ("Omega Canada I"), Omega USA's predecessor in interest, and Omega Nutrition Canada Inc. ("Omega Canada II"). At the hearing held on December 13, 1990, the Court found that it had personal jurisdiction over these Canadian corporations.

In addition, Spectrum counterclaimed against Fred Gornall, Robert Walberg, and Robert Gaffney—all individual shareholders of Omega USA.

2. The parties dispute the date of the first shipment of oil bearing the trademark in question.

3. The original and all successive labels indicated that the flax seed oil was distributed under Spectrum's brand name, "Spectrum Naturals," which was prominently featured on the label, along with Spectrum's logo. Spectrum created, developed, and designed the mark Veg–Omega–3, even before entering into the distributing agreement with Omega Canada I. The oral agreement between the parties did not specify who owned the right to the disputed mark.

The bottles of flax seed oil then bore a label with the disputed Veg–Omega–3 trademark, identified Spectrum as the distributor under license to Alpha, and indicated that the oil was a "Product of USA."

On March 15, 1989, Alpha was incorporated in the State of Washington as Omega U.S.A., which succeeded to Alpha's rights to the disputed mark. Omega USA then became the sole Omega corporation to manufacture and bottle flax seed oil in the United States. Alpha then ceased to exist. The label on the oil again bore the disputed trademark, identified Spectrum as the distributor under license to Omega USA, and indicated that the oil was a "Product of USA." [4]

In September 1989 the business relationship between Spectrum and Omega USA terminated. The dispute in the instant litigation arises out of the parties' conduct after that termination. Omega USA contends that Spectrum's manufacturing and marketing of flax seed oil bearing the Veg–Omega–3 trademark constitutes trademark infringement and other violations. Spectrum, on the other hand, contends that *it* is the rightful owner of the trademark, and thus Omega USA's continued use of the trademark constitutes trademark infringement and unfair competition. [5]

## II. THE PRELIMINARY INJUNCTION

Spectrum requests the Court to award it a preliminary injunction enjoining the use of the trademark Veg–Omega–3, and of variations of the mark, by all three Omega counterdefendants, as well as by the individual counterdefendants Frederick Gornall, Robert Walberg, Robert Gaffney, and their agents. A plaintiff is entitled to a preliminary injunction in a trademark case when it demonstrates *"either:* (1) a combination of probable success on the merits *and* the possibility of irreparable injury *or*

(2) the existence of serious questions going to the merits *and* that the balance of hardships tips sharply in his favor." *Sardi's Restaurant Corp. v. Sardie,* 755 F.2d 719, 723 (9th Cir.1985) (emphasis in original) (citations omitted); *Apple Computer, Inc. v. Formula Int'l Inc.,* 725 F.2d 521, 523 (9th Cir.1984). These are not two distinct tests, but rather, extremes of the same continuum. *Miss World (UK) Ltd. v. Mrs. America Pageants, Inc.,* 856 F.2d 1445, 1448 (9th Cir.1988). For the reasons stated below, Spectrum satisfies both tests.

A. *Likelihood of Success on the Merits/Irreparable Injury*

To demonstrate a probability of success on the merits, Spectrum must prove ownership of a valid trademark and a likelihood that the allegedly infringing mark will be confused with its own mark. *Aveda Corp. v. Evita Marketing, Inc.,* 706 F.Supp. 1419, 1426 (D.Minn.1989). There is no doubt that the public is likely to be confused by Omega USA's and Spectrum's use of the disputed mark, since these marks are identical, and the parties cater to identical markets. In fact, Spectrum has adduced evidence that actual consumer confusion has already ensued. Phillips Decl., para. 9. Omega USA does not contest that Spectrum has established the confusion element.[6] What is hotly contested is whether Omega USA or Spectrum rightfully owns the trademark Veg–Omega–3.

 Spectrum was issued a United States registration for the Veg–Omega–3 mark, Reg. No. 1,609,232, on August 7, 1990. Under the Lanham Act, a federally registered mark is *prima facie* evidence of the registrant's ownership of the mark. 15 U.S.C. §§ 1057(b) & 1115(a) (1982 & Supp. 1990). Such registration shifts the burden of proof of ownership to Omega USA, who

---

4. Omega Canada I's founders subsequently formed Omega Canada II. Since Omega Canada II has never shipped flax seed oil into the United States, its actions are not relevant to Spectrum's request for injunctive relief. As Omega Canada I's and Omega Canada USA's alter ego, it is nonetheless subject to this Court's jurisdiction.

5. Since the termination of the relationship between Omega USA and Spectrum, Omega USA has sold only 25 cases of flax oil under the Veg–Omega–3 mark.

6. All references to Omega USA's position with respect to the proposed injunction embrace the position of the other parties opposing the award as well.

must rebut the presumption of Spectrum's ownership by a preponderance of the evidence. *Vuitton et Fils, S.A. v. J. Young Enterprises*, 644 F.2d 769, 775–76 (9th Cir. 1981). In its attempt to rebut this presumption, Omega USA advances two arguments: (1) Omega Canada I, Omega USA's predecessor in interest, was the first to use the disputed mark, and (2) Spectrum's use of the mark inured to Omega Canada I and its successors by virtue of the fact that Spectrum was a "licensee" to the Omega corporations. The Court rejects each of these arguments.

### (1) The First Use of the Mark

■ It is a well-settled principle of trademark law that ownership of a trademark is founded upon actual use of the mark, not mere invention of it. *Aveda*, 706 F.Supp. at 1427. As between actual users of the mark, it is the *first* user who possesses the superior right. *General Business Servs., Inc. v. Rouse*, 495 F.Supp. 526, 533 (E.D.Pa.1980). Omega USA argues that despite Spectrum's federal registration, Omega Canada I shipped its first flax seed oil installment on September 18, 1987 —more than three weeks prior to Spectrum's claimed first use on October 11, 1987.

Omega USA's logic is flawed. Even if it did ship oil bearing the disputed mark on September 18, 1987, it sent it to Spectrum, as it concedes.[7] Spectrum would then have marketed and distributed the oil, also making use of the mark. This leaves the parties in the same relative positions as if the first shipment were made in October, since Omega USA does not even argue that this first use took place *independently* of Spectrum. The Court therefore finds, based on the evidence submitted, that Omega Canada I's alleged use of the mark on September 18, 1987 does not constitute "first use." The Court is thus left with the same issue of which party possessed the superior right to the mark, based on factors other than first use.

### (2) Spectrum as Licensee

Omega USA makes much of the fact that the original and successive labels for the flax seed oil shipped to Spectrum identified Spectrum as the distributer "under license to" Omega Canada I, then Alpha, and finally, to Omega USA. In addition, in a letter dated June 18, 1987, Spectrum stated to Omega Canada I that it would "market OMEGA NUTRITION FLAX OIL as a licensee of Omega" under its own brand name, "Spectrum Naturals." Thus, Omega USA argues, since Spectrum was a licensee for Omega Canada I and its successors, Spectrum's so-called use of the mark inured to Omega USA, not to Spectrum.

■ Omega USA's reliance on certain cases establishing that a licensee retains no independent right in its licensor's trademark is misplaced. *See, e.g., Aveda Corp. v. Evita Marketing, Inc.*, 706 F.Supp. 1419, 1426–27 (D.Minn.1989); *Cotton Ginny, Ltd. v. Cotton Gin, Inc.*, 691 F.Supp. 1347, 1353–54 (S.D.Fla.1988). An exclusive distributor may acquire trademark rights superior to those of the manufacturer. *Wrist–Rocket Mfg. Co. v. Saunders*, 379 F.Supp. 902, 910, 914 (D.Neb.1974), *modified on other grounds*, 516 F.2d 846 (8th Cir.), *cert. denied*, 423 U.S. 870, 96 S.Ct. 134, 46 L.Ed.2d 100 (1975). The distributor's use of a trademark automatically inures to the manufacturer of the product *only* when the manufacturer is the *original* owner of the mark and the license to distribute the product includes the license to use the manufacturer's mark. *Wrist–Rocket*, 516 F.2d at 850. *Id.* In the instant action, the identity of the original owner of the mark is the precise question in dispute.

■ Absent an agreement between the parties, the Court must look to various factors in determining which party has a superior right to the ownership of the disputed mark. Aside from federal registration, such factors include: (1) which party

---

7. It is questionable whether Omega USA could even establish this fact. The U.S. customs receipt it offers does not indicate that the bottles bore the disputed mark—a critical omission. Moreover, Spectrum's president claims that the labels bearing the mark were not ready on that date.

invented and first affixed the mark onto the product; (2) which party's name appeared with the trademark; (3) which party maintained the quality and uniformity of the product; and (4) with which party did the public identify the product and make complaints. *Wrist–Rocket*, 516 F.2d at 846. Although no single factor is determinative, each of these factors favors Spectrum.

First, Spectrum created the trademark and supervised its artistic rendering, even before reaching its distribution agreement with Omega Canada I. Phillips Decl., para. 3; Phillips Supp.Decl. para. 11; Exhs. 31–34, 44. Second, Spectrum has convincingly demonstrated that until Omega USA commenced its own use of the mark after terminating Spectrum's distribution rights, the Veg–Omega–3 mark was used *solely* in connection with Spectrum's name. In fact, the Omega corporations' promotional materials frequently refer to the product merely as "Omega Flax Seed Oil," without reference to the Veg–Omega–3 mark. Exhs. 15–16. The explanation sheets inserted by the Omega entities into the flax seed oil boxes stated that the product was Spectrum's. Phillips Supp.Decl., para. 5; Exh. 17. The labels used during the parties' business relationship prominently featured Spectrum's brand name and logo directly above the trademark, while the only mention made of the Omega corporations was in tiny print in the lower left hand corner of the label. Furthermore, Arrowhead Mills and Source Naturals, two current distributors of Omega flax oil products, do not use the Veg–Omega–3 trademark to designate their products.

Third, Spectrum, not Omega USA, bore the brunt of the responsibility of maintaining the quality of the product. Although Omega USA argues that since it manufactured and bottled the flax seed oil, it was the sole party in a position to exercise control over the oil's quality, Spectrum presents an impressive array of evidence to the contrary. The letter dated June 18, 1987 from Spectrum to Omega Canada I demands that Omega Canada I inform Spectrum before making any changes to the manufacturing process. Exh. 2. It was Spectrum who demanded that the Omega corporations correct product defects such as under- and over-filled bottles, leaking bottles, and improperly printed press dates. Phillips Supp.Decl., para. 3; Exhs. 5, 12–13. Fourth, it was to Spectrum that customers complained about product defects. Phillips Supp.Decl., para. 4; Exh. 14.

Finally, Omega USA's contention that Spectrum was the licensee of the Omega corporations is itself suspect. The idea of placing the phrase "under license to" on the product's label was not Omega Canada I's, but that of Fred Rohe, Spectrum's marketing director. Exh. 31. He included it on the label to indicate that Spectrum was the exclusive distributor of Omega Canada I's flax seed oil. *Id.* In fact, Omega Canada I had nothing to do with the label's content. Moerman Decl., para. 10; Exh. 31. The phrase was not intended to imply that the trademark itself was under license to Spectrum. *Id.* That the Omega entities were not licensors of the *trademark* itself is further evidenced by the fact that after Spectrum complained to Omega USA about the latter's quality control, Omega USA offered to sell the flax seed oil in bulk so that Spectrum could bottle the product itself. Exh. 19. Omega USA then agreed to, caused to be printed, and paid for a new set of labels that *omitted* the "under license to" phrase, while maintaining Spectrum's brand name and logo above the Veg–Omega–3 trademark. Exh. 20. The Court interprets this as a tacit admission that Spectrum, not Omega USA, owned the mark.

For the above reasons, Omega USA has not rebutted the presumption of ownership conferred upon Spectrum by its federally registered mark. Spectrum has thus demonstrated a likelihood of success on the merits of its counterclaim of trademark infringement. Irreparable harm is often presumed upon a showing of trademark infringement, *see, e.g., Apple Computer, Inc. v. Formula Int'l Inc.*, 725 F.2d 521, 526 (9th Cir.1984); *Energy Jet, Inc. v. Forex Corp.*, 589 F.Supp. 1110, 1120 (E.D. Mich.1984). In addition, Spectrum has sub-

mitted abundant evidence showing that if the Court does not award it injunctive relief, it will likely suffer irreparable harm. This harm will follow as a result of consumer confusion as to who owns the trademark in question, Spectrum's loss of goodwill and the fruits of its extensive promotion of flax oil bearing the mark Veg–Omega–3, and the tarnishing of its reputation as a result of Omega USA's alleged poor quality controls over its product. Moreover, Spectrum has shown that while it continuously uses the disputed mark, Omega USA makes only intermittent use of it; hence Spectrum would suffer greater hardship if denied injunctive relief. Blackburn Decl., para. 2; Phillips Supp.Decl., paras. 8–9; Exhs. 9, 22–23. Spectrum is therefore entitled to the preliminary injunction it seeks.

### B. *Serious Questions/Balance of the Hardships*

■ Spectrum is entitled to preliminary injunctive relief under the second test as well. Spectrum's trademark infringement counterclaim raises "serious questions" as to the ownership of the mark in question, as it has shown a "fair chance of success on the merits." *Sierra On–Line, Inc. v. Phoenix Software, Inc.*, 739 F.2d 1415, 1421 (9th Cir.1984). As indicated above, it has also submitted adequate evidence of the hardship it would endure without injunctive relief. Omega USA, on the other hand, has presented no evidence of the hardship it would suffer if Spectrum received its requested relief. Accordingly, the Court concludes that the balance of the hardships weighs in Spectrum's favor.

This leaves the question of precisely *what* to enjoin. Spectrum requests that the Omega and individual counterdefendants be enjoined from using the mark "Veg–Omega–3," "Veg–Omega," "Omega–3," or other names, marks, or packaging deceptively similar thereto. Omega USA objects to enjoining the use of the term "Omega–3," arguing that this is merely a generic term for a fatty acid. The point is well-taken. In addition, Omega USA objects to enjoining the use of "packaging deceptively similar" to Spectrum's, fearing

that such language could be construed as prohibiting Omega USA's continued use of black plastic, eight (8) to eight and one half (8½) ounce bottles to package its flax seed oil. This request, too, is reasonable.

The above constitutes this Court's findings of fact and conclusions of law.

Accordingly,

IT IS HEREBY ORDERED that:

(1) During the pendency of this action and until the Court shall otherwise order, plaintiff/counterdefendants Omega USA, Omega Canada I, Omega Canada II, Frederick Gornall, Robert Walberg, Robert Gaffney, and each of their agents, servants, employees, representatives, and all persons acting in concert with them, shall be preliminarily enjoined from using the name and trademark "Veg–Omega–3," "Veg–Omega," or names or marks deceptively similar thereto, but not including the generic term "Omega–3."

(2) Spectrum Marketing, Inc. shall post bond with the Clerk of this Court in the amount of $50,000.00 within ten days of the issuance of this Order.