96 F.3d 1217
 40 U.S.P.Q.2d 1149, 96 Cal. Daily Op. Serv. 7048,
96 Daily Journal D.A.R. 11,557
 SENGOKU WORKS LTD., a corporation,
Plaintiff-counter-defendant Appellee-Cross-Appellant,
v.
RMC INTERNATIONAL, LTD., a corporation; Michael Resmo;
Joseph Malaga, Defendants-counter-plaintiffs
Appellants-Cross-Appellees.
 Nos. 95-55990, 95-56087.
 United States Court of Appeals,
Ninth Circuit.
 Argued Aug. 7, 1996.
Decided Sept. 20, 1996.
 
 Jan P. Weir, Poms, Smith, Lande & Rose, Los Angeles, California, for defendants-counter-plaintiffs-appellants-cross-appellees.
 R. Joseph Trojan, Trojan Law Offices, Beverly Hills, California, for plaintiff-counter-defendant-appellee-cross-appellant.
 Appeals from the United States District Court for the Central District of California, Edward Rafeedie, District Judge, Presiding. D.C. No. CV-94-03197-ER.
 Before REINHARDT, HALL and LEAVY, Circuit Judges.
 CYNTHIA HOLCOMB HALL, Circuit Judge:
 
 
 1
 RMC International Ltd., and its officers Michael Resmo and Joseph Malaga, appeal the district court's judgment, following a jury trial, in favor of Sengoku Works Ltd. for trademark and trade dress infringement under the Lanham Act, 15 U.S.C. §§ 1051-1127, and breach of contract under California law. RMC had served since 1985 as exclusive United States distributor of kerosene heaters manufactured by Sengoku, a Japanese corporation, and these charges arose in connection with RMC's decision to market kerosene heaters from another source.
 
 
 2
 In this opinion we address only the issue of ownership of the Keroheat trademark. All the other issues are disposed of in a separate unpublished disposition.
 
 
 3
 * RMC is an importer of portable kerosene heaters. From 1985 to 1994, it imported and sold exclusively heaters manufactured by Sengoku, pursuant to yearly contracts signed by the parties. These contracts included exclusivity provisions, under which Sengoku appointed RMC its exclusive U.S. distributor, and RMC agreed to distribute only Sengoku-manufactured heaters. As part of this arrangement, Sengoku sold the heaters to an independent trading company, Zenith & Co., who then sold them to RMC. The RMC/Zenith/Sengoku heaters bore the trademark "Keroheat."Under the agreement, RMC handled all of the marketing and advertising for the heaters, and arranged for all of the retailer purchases of the heaters. Only RMC's name appeared on the product and packaging, and RMC dealt with all consumer complaints and returns. RMC claims that in the early 1990s it began to experience increasing quality problems with the Sengoku heaters, and increasing customer complaints. When Sengoku did not take satisfactory steps to remedy the problems, in 1993 RMC began to negotiate with Wooshin, a Korean corporation, to manufacture and supply kerosene heaters to RMC.
 
 
 4
 RMC maintains that they had no valid contract with Sengoku for 1994. For the first quarter of 1994, RMC performed as it had for the previous nine years. But in late March Sengoku became aware that RMC was selling heaters to Sengoku's largest U.S. customer that were manufactured by Wooshin, and that bore the Keroheat trademark and closely resembled Sengoku's heaters. Sengoku filed suit against RMC for breaching the exclusivity provision of their contract, and for trademark and trade dress infringement.
 
 
 5
 Sengoku and RMC each claim ownership of the Keroheat trademark. From 1982 to 1985, prior to the Sengoku/RMC agreements, Sengoku heaters bearing the Keroheat mark were sold to a trading company called Imarflex, and were then sold in the U.S. by C.C.I., a company partially owned by Cort Clark. In 1985, Clark sued Imarflex for breach of contract and trademark infringement, claiming that he owned the Keroheat trademark. After the Sengoku/Imarflex/Clark deal ended, Clark then founded RMC, with Michael Resmo and Joseph Malaga. RMC began selling Sengoku heaters under the Keroheat mark in 1985, and obtained a federal registration of the mark. Clark left RMC in 1992, and now works for Sengoku.
 
 
 6
 In July 1994 the district court granted Sengoku a preliminary injunction to enjoin RMC from selling the Wooshin heater bearing the Keroheat mark. After a seven day jury trial, the jury found for Sengoku on all claims. The jury awarded Sengoku only $1.00 in damages on the trademark infringement claim. The district court then ordered the cancellation of RMC's federal trademark registration for Keroheat, and entered a permanent injunction barring RMC from using the mark. The district court also denied RMC's post-trial motions for judgment as a matter of law and for a new trial. This appeal followed.
 
 II
 
 7
 Both parties agree that RMC did distribute heaters bearing the Keroheat trademark that were not manufactured by Sengoku. However, they both claim ownership of the Keroheat trademark, and this issue is central to the finding for Sengoku on trademark infringement.
 
 
 8
 Challenges to the sufficiency of the evidence and the denial of a motion for judgment notwithstanding the verdict are reviewed de novo to determine if the plaintiff's claims were supported by substantial evidence. Erickson v. Pierce County, 960 F.2d 801, 804 (9th Cir.), cert. denied, 506 U.S. 1035, 113 S.Ct. 815, 121 L.Ed.2d 687 (1992). Substantial evidence is such relevant evidence as reasonable minds might accept as adequate to support the jury's verdict. Murray v. Laborers Union Local No. 324, 55 F.3d 1445, 1452 (9th Cir.1995).
 
 
 9
 It is axiomatic in trademark law that the standard test of ownership is priority of use. To acquire ownership of a trademark it is not enough to have invented the mark first or even to have registered it first; the party claiming ownership must have been the first to actually use the mark in the sale of goods or services. See generally J. Thomas McCarthy, 2 McCarthy on Trademarks and Unfair Competition § 16.03 (3d ed.1996) (hereinafter McCarthy ). When proving ownership of a trademark, federal registration of the mark is prima facie evidence that the registrant is the owner of the mark. Lanham Act § 7(b), 15 U.S.C. § 1057(b); Lanham Act § 33(a), 15 U.S.C. § 1115(a). Therefore, the registrant is granted a presumption of ownership, dating to the filing date of the application for federal registration, and the challenger must overcome this presumption by a preponderance of the evidence. Vuitton et Fils S.A. v. J. Young Enterprises, 644 F.2d 769, 775-76 (9th Cir.1981); Rolley, Inc. v. Younghusband, 204 F.2d 209 (9th Cir.1953). However, the non-registrant can rebut this presumption by showing that the registrant had not established valid ownership rights in the mark at the time of registration--in other words, if the non-registrant can show that he used the mark in commerce first, then the registration may be invalidated.
 
 
 10
 Disputes over trademark ownership often arise when the mark is used on goods that are manufactured by one company, but are marketed by another pursuant to an exclusive distributorship agreement. These relationships usually arise in one of two factual situations: either (1) the manufacturer licenses the distributor to use a trademark owned by the manufacturer, or (2) the distributor owns its own mark, sometimes called a "private label," which it affixes to the manufacturer's product before delivery. In either case, the ownership of the mark turns on which party was the initial owner.
 
 
 11
 Unfortunately, not every distribution agreement fits clearly into one of these two categories. When disputes arise between a manufacturer and distributor, courts will look first to any agreement between the parties regarding trademark rights. Premier Dental Products v. Darby Dental Supply Co., 794 F.2d 850, 854 (3d Cir.), cert. denied, 479 U.S. 950, 107 S.Ct. 436, 93 L.Ed.2d 385 (1986). But in the absence of an agreement between the parties, the manufacturer is presumed to own the trademark. Energy Jet, Inc. v. Forex Corp., 589 F.Supp. 1110, 1116 (E.D.Mich.1984); Wrist-Rocket Mfg. Co. v. Saunders, 379 F.Supp. 902, 909 (D.Neb.1974) (" Wrist-Rocket I "), aff'd in part and rev'd in part on other grounds, 516 F.2d 846 (8th Cir.) (" Wrist-Rocket II "), cert. denied, 423 U.S. 870, 96 S.Ct. 134, 46 L.Ed.2d 100 (1975); Automated Productions Inc. v. FMB Maschinenbaugesellschaft MBH & Co., 36 U.S.P.Q.2d 1714, 1716, 1995 WL 459233 (N.D.Ill.1995). That presumption applies with equal force to cases involving foreign manufacturers. See, e.g., Energy Jet, 589 F.Supp. at 1116; Hank Thorp, Inc. v. Minilite, Inc., 474 F.Supp. 228, 236 (D.Del.1979). Although some courts have suggested that the presumption may be different in the case of foreign manufacturers, frequently the identical standard has in fact been applied, and we see no reason for doing otherwise.
 
 
 12
 The presumption in favor of the manufacturer is rebuttable, however, and a long-standing line of precedent holds that an exclusive distributor may acquire trademark rights superior to those of the manufacturer. See Menendez v. Holt, 128 U.S. 514, 9 S.Ct. 143, 32 L.Ed. 526 (1888); Omega Nutrition v. Spectrum Marketing, 756 F.Supp. 435, 438 (N.D.Cal.1991) (granting a preliminary injunction to the exclusive distributor against the manufacturer for trademark infringement); see also 2 McCarthy, § 16.15 n.3 (citing a long list of cases following this principle). Therefore, the distributor may rebut the presumption in favor of the manufacturer, and courts look to various factors when determining which party has the superior right of ownership, including:
 
 
 13
 (1) which party invented and first affixed the mark onto the product;
 
 
 14
 (2) which party's name appeared with the trademark;
 
 
 15
 (3) which party maintained the quality and uniformity of the product; and
 
 
 16
 (4) with which party the public identified the product and to whom purchasers made complaints.
 
 
 17
 Omega Nutrition, 756 F.Supp. at 438-39. Furthermore, courts will also consider which party possesses the goodwill associated with the product, or which party the public believes stands behind the product. Premier Dental, 794 F.2d at 854.
 
 
 18
 On appeal (and at trial), Sengoku seemed to argue that once it was established that Sengoku was the manufacturer and RMC was the exclusive distributor, then the issue of trademark ownership is resolved--in other words, if this was a manufacturer/exclusive distributor relationship, then Sengoku is entitled to the presumption in favor of the manufacturer and has therefore established its ownership of the trademark. This is, however, an oversimplification of the law.
 
 
 19
 The determinative issue is not which label is placed upon the relationship, but rather which party can establish priority of ownership. See Wrist-Rocket II, 516 F.2d at 850 (When the issue "is who, as between the manufacturer and distributor, has ownership of a trademark created after formation of the business relationship ... the dispositive question [is] which party has priority of appropriation and use of the trademark."). The court must first look to any agreement or acknowledgment between the parties regarding trademark rights. There was no such agreement between Sengoku and RMC; thus, if neither party can prove that it initially owned the trademark, then Sengoku is entitled to claim the presumption in favor of the manufacturer. In that case, RMC may rebut this presumption by addressing the factors set forth above.
 
 
 20
 While this is a close question, we find that there is substantial evidence in the record to support a finding that Sengoku owned the trademark. Sengoku first affixed the Keroheat mark to its heaters in 1982, at least two years before RMC began distributing Keroheat heaters. RMC's federal registration of the mark was not acquired until 1992, and RMC claimed it first used the mark in commerce in 1985. Although RMC claims that CCI, the exclusive distributor before RMC, owned the trademark, there is no evidence that ownership was transferred to RMC. Thus, the jury could reasonably have found that Sengoku established prior use.
 
 
 21
 Furthermore, when considering the factors that go to trademark ownership, some support Sengoku's argument, and some support RMC's. Only RMC's name appears on the product and packaging, and RMC handles all customer complaints and returns. However, Sengoku exercises control over the product quality and uniformity, and Sengoku apparently first affixed the trademark to its heaters. Also, other dealers in the business testified that they attribute the heaters bearing the Keroheat mark to Sengoku.
 
 
 22
 In determining whether substantial evidence supports a jury verdict, we cannot simply substitute our judgment for that of the jury. We must consider whether the record contains substantial evidence upon which reasonable minds could base the verdict. In this case, we find that the jury could reasonably have found that Sengoku owned the trademark. Therefore, we affirm the jury's verdict for Sengoku on trademark infringement.
 
 III
 
 23
 RMC also challenges the jury instructions on trademark ownership. RMC claims that the instructions as formulated allowed the jury to find that because Sengoku was a foreign manufacturer it owned the trademark regardless of prior acquisition, and regardless of any other factors that prove ownership.
 
 
 24
 When evaluating the formulation of jury instructions, we consider the instructions as a whole and review them for an abuse of discretion. Gizoni v. Southwest Marine Inc., 56 F.3d 1138, 1142 n. 5 (9th Cir.1995). The instructions on trademark ownership set forth the general rule regarding the presumption in favor of the manufacturer: "Between a foreign manufacturer and its exclusive distributor, the law presumes that the foreign manufacturer is the owner or [sic] the trademark and/or trade dress unless there is an agreement to the contrary". RMC argues that this instruction was erroneous for two reasons. First, RMC claims that the instruction failed to notify the jury that ownership can be proven by an acknowledgment by Sengoku that RMC owned the mark. However, a later portion of the instruction indicates several factors to consider when determining ownership, including "admissions by the parties as to which one owns the trademark." We find that this instruction encompasses acknowledgment by Sengoku that RMC owned the mark.
 
 
 25
 Second, RMC claims that the instruction created an improper presumption, which allowed the jury to find that because Sengoku was the foreign manufacturer of the heaters, it was the owner of the mark, regardless of the evidence to the contrary. RMC correctly points out that the determinative issue on ownership is usually priority of use. See Wrist-Rocket II, 516 F.2d at 850 (When the issue "is who, as between the manufacturer and distributor, has ownership of a trademark created after formation of the business relationship ... the dispositive question [is] which party has priority of appropriation and use of the trademark."). But in cases where neither side can establish priority of use, then the presumption in favor of the manufacturer applies.
 
 
 26
 These instructions, taken as a whole, indicate that this presumption may apply here, but also that there are several other factors to consider as well--such as the origin of the trademark, whether the defendant had federally registered the mark, which party consumers believed to be the source of the goods identified, and which party controlled the quality and design of the goods. As a result, we find that these instructions, taken as a whole, adequately cover the issues, correctly state the law, and are not misleading. See Fikes v. Cleghorn, 47 F.3d 1011, 1013 (9th Cir.1995). We therefore hold that the district court did not abuse its discretion when it formulated the jury instructions regarding trademark ownership.
 
 IV
 
 27
 For the foregoing reasons, we hold that the jury's verdict for Sengoku on trademark infringement is supported by substantial evidence, and is therefore AFFIRMED.