**KRAV MAGA ASSOCIATION OF AMERICA, INC., a California corporation [KMAA], Plaintiff,**

v.

**Eyal YANILOV, an individual, International Krav Maga Federation, an Israelite entity, and Dror Saporta, an individual, Defendants.**

No. CV 05–07205 DDPAJWX.

United States District Court,
C.D. California.

Dec. 12, 2006.

David K. Caplan and Konrad K. Gatien of Keats McFarland & Wilson LLP, Los Angeles, CA, for Defendants.

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFFS' MOTION FOR RULE 56(f) CONTINUANCE**

PREGERSON, District Judge.

This matter comes before the Court on the defendants' motion for summary judgment and the plaintiffs' motion to continue summary judgment. After reviewing and considering the parties' papers, the Court grants in part and denies in part the defendants' motion and denies the plaintiffs' motion pursuant to Rule 56(f).

## I. BACKGROUND

The plaintiff Krav Maga Association of America, Inc. ("KMAA") provides instructional courses for an Israeli self-defense system known as krav maga (the "krav maga system"). The krav maga system was created by Imi Lichtenfeld ("Lichtenfeld") in Israel in 1948. In 1981, KMAA's founder, Darren Levine ("Levine"), learned the krav maga system from Lichtenfeld and Eyal Yanilov ("Yanilov").

In 1982, Levine began developing the krav maga system in the United States. In 1984, Levine established KMAA and began promoting the krav maga system under the following trademarks: (1) KRAV MAGA ASSOCIATION OF AMERICA, (2) KRAV MAGA WORLDWIDE, (3) KRAV MAGA, and (4) the "Koof–Mem" logo (collectively the "KRAV MAGA Marks"). The plaintiff Krav Maga Worldwide Enterprises, LLC ("KMW") is the exclusive licensee of the KRAV MAGA Marks (collectively the "Plaintiffs").

KMAA owns five registrations for the "Koof–Mem" logo with the Patent and Trademark Office ("PTO"), two of which have acquired the status of incontestability. KMAA has filed trademark applications for the remaining KRAV MAGA Marks, and the applications have been published for opposition since September 2004. In addition to KMAA's exclusive licensing agreement with KMW, KMAA has entered into over 200 non-exclusive licensing agreements regulating the use of the KRAV MAGA Marks.

Starting in the late 1980's, Levine began inviting Yanilov from the Israel Krav Maga Association ("IKMA"), also known as Israel Association (Agudah) for Krav Maga, as a guest instructor for KMAA classes.

In 1993, KMAA learned that Dror Saporta ("Saporta") was using the KRAV MAGA Marks without a licensing agreement, and that Saporta's activities were sponsored by Yanilov and IKMA in Israel. Levine contacted Yanilov and demanded that he cease and desist. Yanilov, in response, asked Levine to take Saporta "under his wings." When Levine declined, Moyel, a representative of IKMA personally delivered to KMAA a document entitled "Grant of Exclusive Rights in the United States" ("Admission Letter"). In the Admission Letter, IKMA granted to KMAA

"the exclusive and perpetual right to use and license the name 'krav maga' and the trademark logo ('km')." Moyel stated in his declaration that Yanilov participated in discussing the contents of and approved the Admissions Letter. Saporta's unauthorized use of the KRAV MAGA Marks terminated after Moyel's delivery of IKMA's Admission Letter in 1994. In April 2004, KMAA learned that Saporta again was teaching self-defense classes using the KRAV MAGA Marks. Thereafter, KMAA engaged Saporta to negotiate a settlement and several licensing agreement drafts were exchanged without success. In October 2005, KMAA filed a complaint for trademark violations against Yanilov, Saporta, and IKMA (collectively the "Yanilov Defendants"). Additional defendants were later added to this action.

## II. DISCUSSION

### A. Legal Standards

#### 1. Summary Judgment

Summary judgment is appropriate if there is no genuine issue as to any material fact and where a party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The moving party has no burden, however, to negate or disprove matters on which the mon-moving party will have the burden of proof at trial. *Id.* at 325, 106 S.Ct. 2548. The moving party need only point out to the court that there is an absence of evidence to support the non-moving party's case. *Id.*

The burden then shifts to the non-moving party to "designate specific facts showing that there is a genuine issue for trial." *Id.* at 324, 106 S.Ct. 2548 (quoting Rule 56(e)). To carry this burden, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "The mere existence of a scintilla of evidence ... will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Evidence that "is merely colorable, or is not significantly probative," is not sufficient to avoid summary judgment. *Id.* at 249–250, 106 S.Ct. 2505.

Summary judgment cannot be granted where a genuine dispute exists as to any material fact. Fed.R.Civ.P. 56(c). A "material" fact is one which might affect the outcome of the case under the applicable law. *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. A dispute about a material fact is genuine if a reasonable jury could return a verdict for the non-moving party. *Id.* In deciding a motion for summary judgment, the evidence is viewed in the light most favorable to the non-moving party, and all justifiable inferences are to be drawn in its favor. *Id.* at 255, 106 S.Ct. 2505. Moreover, "credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge [when] he is ruling on a motion for summary judgment." *Id.*

#### 2. Continuance or Denial of Motions for Summary Judgment under Rule 56(f)

Summary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). Rule 56(f), however, empowers the court to continue or deny a motion for summary judgment if the op-

posing party needs time to discover facts essential to justify the opposition. *Hall v. Hawaii,* 791 F.2d 759, 761 (9th Cir.1986); Fed. R. Civ. P 56(f). Rule 56(f) reads:

> Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts · essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

Fed.R.Civ.P. 56(f).

■ To prevail under Rule 56(f), a party opposing a motion for summary judgment must make clear what information is sought and how it would preclude summary judgment. *Hall,* 791 F.2d at 761. To obtain postponement or denial for further discovery, the opposing party's declarations must show: (1) facts establishing a likelihood that controverting evidence may exist as to a material fact; (2) the specific reasons why such evidence cannot be presented at the present time; and (3) the steps or procedures that the opposing party intends to utilize to obtain such evidence. *Terrell v. Brewer,* 935 F.2d 1015, 1018 (9th Cir.1991).

A party's summary judgment motion cannot be granted until the court first determines the merits of the opposing party's request for continuance under Rule 56(f). *Garrett v. San Francisco,* 818 F.2d 1515, 1518–19 (9th Cir.1987). Rule 56(f) motions, although discretionary, should be granted where the party opposing summary judgment makes a timely application that specifically identifies relevant information, and where there is some basis for believing that the information sought actually exists. *Church of Scientology of San Francisco v. Internal Revenue Service,* 991 F.2d 560, 562 (9th Cir.1993).

## B. *Analysis*

■ In this case, the plaintiffs seek trademark protection for the term "krav maga," which is not a federally registered trademark. The defendants contend that the term "krav maga" is generic and therefore not entitled to trademark protection. If the term is generic, it cannot be the subject of trademark protection under any circumstances. *Surgicenters of America, Inc. v. Medical Dental Surgeries Co.,* 601 F.2d 1011, 1014 (9th Cir.1979).

### 1. Allocation of the Burden of Proof

■ The first issue to address is which party has the burden of establishing that the term "krav maga" is or is not subject to trademark protection. In general, when a plaintiff pursues a trademark action involving a properly registered mark, that mark is presumed valid, and the burden of proving that the mark is generic rests upon the defendant. *Yellow Cab Co. of Sacramento v. Yellow Cab of Elk Grove, Inc.,* 419 F.3d 925, 928 (9th Cir.2005) (citing *Filipino Yellow Pages, Inc. v. Asian Journal Publications, Inc.,* 198 F.3d 1143, 1146 (9th Cir.1999)); *see also* 15 U.S.C. § 1057(b) (stating that a "certificate of registration of a mark . . . shall be prima facie evidence of the validity of the registered mark . . .").

■ If the disputed term has not been federally registered, however, and the defendant asserts genericness as a defense, the burden shifts to the plaintiff to show that the mark is nongeneric. *Id.*

The plaintiffs argue that the general rule concerning the allocation of the burden of proof does not apply in this case. They contend that "once a plaintiff creates a genuine issue of fact as to whether the mark at issue is generic, the burden falls on the defendant to prove the mark has become generic." The plaintiffs support their contention by citing to *In Hyuk Suh*

v. Yang, 987 F.Supp. 783, 790 (N.D.Cal. 1997). (Pls.' Opp'n Summ. J. 19).

Yang applied the exception established by the Second Circuit in Murphy Door Bed Co. v. Interior Sleep Systems, Inc., 874 F.2d 95, 101 (2d Cir.1989). This exception, however, has not been recognized in the Ninth Circuit. Moreover, the plaintiffs' contention is a mischaracterization of the narrow Second Circuit exception. In Murphy Door Bed Co., the Second Circuit created an exception to the general rule that "where the public is said to have expropriated a term established by a product developer, the burden is on the defendant to prove genericness." Id. (emphasis added). The Murphy Door Bed Co. exception applies only to protect a product innovator. Yellow Cab, 419 F.3d at 929.

Here, the self-defense system "krav maga" was not developed, nor was the term "krav maga" originally coined, by Levine, KMAA or KMW. Lichtenfeld developed the "krav maga" system and name in 1948 and continued use of the term with IKMA in Israel until his death. In contrast, KMAA's use of the term "krav maga" is derivative. Therefore, the plaintiffs' contention is wrong and the Second Circuit's exception for product developers does not apply.

Here, the term "krav maga" is unregistered; Levine and KMAA have not yet been successful in their attempts to register it with the PTO. Thus KMAA, under the general rule, bears the burden of proof of establishing that "krav maga" is not generic.

2. Whether the Term "Krav Maga" is Generic

■ The existence and extent of a trademark's protection depends on the mark's inherent distinctiveness. Yang, 987 F.Supp. at 789. There are five categories of trademarks: (1) generic, (2) descriptive, (3) suggestive, and (4) arbitrary;

and (5) fanciful. KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc., 408 F.3d 596, 602 (9th Cir.2005). The latter three categories are deemed inherently distinctive and are automatically entitled to protection because they naturally serve to identify a particular source of a product. Id. (relying on Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763, 768, 112 S.Ct. 2753, 120 L.Ed.2d 615 (1992)).

Generic marks, however, give the general name of and embrace an entire class of products or services. Kendall-Jackson Winery, Ltd. v. E. & J. Gallo Winery, 150 F.3d 1042, 1047 n. 8 (9th Cir.1998). It is one that refers to the genus of which a particular product or service is a species. Surgicenters, 601 F.2d at 1014 (citing to Park 'N Fly, Inc. v. Dollar Park and Fly, Inc., 469 U.S. 189, 194, 105 S.Ct. 658, 83 L.Ed.2d 582 (1985)). Generic marks are not capable of receiving trademark protection because they identify the product or service, rather than the source of the product or service. KP Permanent, 408 F.3d at 602.

■ The ultimate test of whether a mark is generic is how it is understood by the consuming public. Surgicenters, 601 F.2d at 1015 n. 11. Courts look to whether consumers understand the term to refer only to a particular producer's goods or services or whether the consumer understands the term to refer to the goods or services themselves. KP Permanent, 408 F.3d at 604. If buyers understand the term as being identified with a particular producer's goods or services, it is not generic. Surgicenters, 601 F.2d at 1016 (citing to King-Seeley Thermos Co. v. Aladdin Industries, Inc., 321 F.2d 577, 579 (2d Cir.1963)). If, on the other hand, the term is identified with all such goods or services, regardless of their suppliers, it is generic and not a valid mark. Id.

■ The Ninth Circuit applies the "who-are-you/what-are-you" test to determine whether a mark is generic. *Filipino,* 198 F.3d at 1147. "A mark answers the buyer's questions 'Who are you?' 'Where do you come from?' 'Who vouches for you?' But the generic name of the product answers the question 'What are you?'" *Filipino,* 198 F.3d at 1147. Under this test, if the primary significance of the trademark is to describe the type of product or service rather than the producer, the trademark is generic. *Anti–Monopoly, Inc. v. General Mills Fun Group,* 611 F.2d 296, 304 (9th Cir.1979). Thus, in order to establish a valid trademark, the trademark plaintiff must show that the primary significance of the term in the minds of the consuming public is not the product but the producer. *Kellogg Co. v. National Biscuit Co.,* 305 U.S. 111, 113, 59 S.Ct. 109, 83 L.Ed. 73 (1938).

Whether a mark is generic is a question of fact. *Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co., Inc.,* 240 F.3d 832, 840 (9th Cir.2001). A generic mark cannot become a trademark under any circumstances. *Surgicenters,* 601 F.2d at 1014.

3. There is No Genuine Issue of Material Fact as to the Genericness of the Term "Krav Maga"

■ In order to survive the Yanilov defendants' motion for summary judgment, KMAA has the burden, as the trademark plaintiff, of demonstrating that the term "krav maga" is not generic. The Court finds that KMAA failed to carry its burden for the following reasons.

First, the Yanilov defendants have set forth evidence suggesting that the term "krav maga" is perceived and understood by the consuming public to refer generally to a type of martial arts and is therefore generic. To show that a term has come to symbolize the general class or category of the service to the public, evidence of the public's understanding of the term may be obtained from any competent source, such as purchaser testimony, consumer surveys, dictionary listings, trade journals, newspapers, and other publications. *In re Merrill Lynch,* 828 F.2d 1567, 1570 (Fed.Cir. 1987).

Here, the Yanilov defendants introduced definitions of the Hebrew term "krav maga," which, for example, is defined as "contact combat" by the United States Patent and Trademark Office. (Ex. 1, Attach. to Decl. of David Caplan). The Yanilov defendants also submitted advertisements, trade journals, magazine articles, and various publications that refer to the term "krav maga" generally as an Israeli form of self-defense. The book *The Complete Idiot's Guide to Martial Arts* defines "krav maga" as "[a] military-based Israeli combative style." Cezar Borkowski and Marion Manzo, *The Complete Idiot's Guide to Martial Arts* (Ex. B(3), Decl. of Dror Saporta). *Martial Arts for Dummies* defines the term as "an Israeli form of self-defense that uses kicks, punches, and throws." Jennifer Lawler, *Martial Arts for Dummies* (Ex. B(4), Decl. of Dror Saporta). Wikipedia, a free, online encyclopedia, defines "krav maga" as a martial art developed by Lichtenfeld that stresses close combat and self defense. Wikipedia definition of Krav Maga, at http://en. wikipedia.org.wiki/Krav Maga (Ex. B(5), Decl. of Dror Saporta.)

This type of evidence has been deemed sufficient to demonstrate the genericness of a term. *Yang,* 987 F.Supp. at 792. In *Yang,* for example, the court held that the defendant's introduction of magazine articles, textbooks, and advertisements referencing the mark at issue was sufficient to demonstrate genericness on summary judgment. *Id.* In *Yang,* the plaintiff Suh ("Suh") created a unique form of martial arts that he coined "Kuk Sool Won," and

the Korean government recognized Suh's exclusive right to use the term. *Id.* at 786. Suh later licensed 120 schools worldwide, including the United States, under the "Kuk Sool" trademark and logo. *Id.*

The defendant Yang ("Yang") studied "Kuk Sool Won" at a school operated by one of Suh's licensees and eventually became an instructor at the school. *Id.* Yang later bought one of Suh's licensee schools and taught there until he became dissatisfied with Suh's management style. *Id.* Yang left Suh's organization and started his own studio that included the term "Kuk Sool" in its name, and Suh brought suit claiming trademark infringement. *Id.*

Yang, in response, filed a motion for summary judgment contending that the term "kuk sool" is generic. *Id.* at 788. In support of its contention, Yang introduced dictionary definitions of the term "kuk sool," which literally translates to "national martial arts." *Id.* at 789. In addition, Yang introduced magazine articles, textbooks, and advertisements where the term "kuk sool" was identified as a martial art rather than a method of instructional services that Suh alleged. *Id.* at 792. Suh, on the other hand, did not introduce any material evidence suggesting that "kuk sool" is understood by the consuming public to denote a single source of martial art instructional services. *Id.* at 790–91. Accordingly, the *Yang* court held that Suh's exhibits failed to raise an issue of material fact that the term "kuk sool" is not generic. *Id.* at 792.

Here, similar to the defendant in *Yang*, the Yanilov defendants submitted hundreds of pages of exhibits referencing the term "krav maga" as an Israeli form of martial arts that emphasizes close combat and self-defense; not a single exhibit used the term "krav maga" in reference to a particular source of instructional services particular to Levine, KMAA or KMW.

KMAA, on the other hand, did not introduce any material evidence that would tend to show that "krav maga" is understood by the public to denote a single source of martial arts instructional services particular to KMAA or Levine. Rather, KMAA submitted a total of five declarations. Each declaration contends that KMAA's teaching of "krav maga" is unique and exclusive to Levine and KMAA.

■ The declarations submitted by KMAA, however, are insufficient to raise a genuine issue as to the genericness of the term "krav maga." Attestations from persons in close association and intimate contact with the trademark plaintiff's business do not reflect the views of the purchasing public. *Self–Realization Fellowship Church v. Ananda Church of Self–Realization,* 59 F.3d 902, 910 (9th Cir.1995) (citing *Norm Thompson Outfitters, Inc. v. General Motors Corp.,* 448 F.2d 1293, 1297 (9th Cir.1971)). Here, the declarations are from KMAA's former students, a licensee of KMAA, and an advertising director of a publication that KMAA advertises in. Each of these declarants have had either personal or business relations with Levine or KMAA and, as such, provide little probative value. The declarations do not compensate for KMAA's failure to provide *any* evidence with respect to consumer perceptions.

Second, KMAA fails the "Who-are-you?/What-are-you?" test. If a buyer were to come across the term "krav maga" by itself, it would not answer the questions "Who are you?" "Where do you come from?" "Who vouches for you?" Nor would the term "krav maga" connote the producer of the product rather than the product itself. Instead, the term "krav maga" answers the question "What are you?", the primary significance of which is to describe the martial art and self-defense

system developed by Lichtenfeld in Israel in 1948. Because KMAA failed to come forward with any evidence demonstrating that the primary significance behind the term "krav maga" refers to KMAA, the producer, rather than the form of martial arts, the product, summary judgment is appropriate on this issue.

Moreover, giving KMAA exclusive rights to the term "krav maga" is inappropriate because it would effectively grant KMAA, as owner of the mark, a monopoly, since a competitor could not describe the product as what it is. *Surgicenters*, 601 F.2d at 1017. Accordingly, this Court finds that summary judgment in favor of the Yanilov defendants on the issue of genericness is appropriate.

4. There is a Genuine Issue of Material Fact as to Whether Plaintiffs Own the "Koof–Mem" Logos

The test of ownership of a trademark is priority of use. *Sengoku Works Ltd. v. RMC International, Ltd.*, 96 F.3d 1217, 1219 (9th Cir.1996). The party claiming ownership of a mark must have been the first to actually use the mark in the sale of goods or services. *Id.* (citing 2 THOMAS MCCARTHY, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 16.03 (3d ed.1996)).

 Federal registration of a trademark is prima facie evidence that the registrant is the owner of the mark. *Id.;* 15 U.S.C. §§ 1057(b) & 1115(a). The registrant is granted a presumption of ownership as of the application filing date, and the challenger must overcome this presumption by a preponderance of the evidence. *Sengoku*, 96 F.3d at 1219 (citing *Vuitton et Fils S.A. v. J. Young Enterprises*, 644 F.2d 769, 775–76 (9th Cir.1981)). This presumption may be rebutted, however, if the challenger can show that he or she used the mark in commerce first. *Id.*

Here, genuine issues of material fact exist as to which party was the first to actually use the "koof-mem" logos in the sale of goods or services. The plaintiffs allege that they first used the logos as early as 1984 when Levine established KMAA and began promoting his business. The Yanilov defendants, on the other hand, contend that IKMA first used the "koof-mem" logos in 1981 when krav maga founders from Israel traveled to several U.S. cities demonstrating and teaching the martial art. The Yanilov defendants do not, however, provide any support or evidence for their contention. As stated above, to prove ownership of a trademark, the party claiming ownership must have been the first to actually use the mark in the sale of goods or services. *Id.* There are no facts here to support the Yanilov defendants' contention that they first used the "koof-mem" logos in the sale of goods or services.

 Moreover, the plaintiffs introduced prima facie evidence of ownership: federal registration for the "koof-mem" logos. Although not dispositve on the issue of ownership of the marks, KMAA's federal registrations establish a presumption of ownership that the Yanilov defendants must overcome by a preponderance of the evidence. *Vuitton*, 644 F.2d at 775–76. Here, the Yanilov defendants failed to provide any evidence, apart from their naked assertion, that they used the "koof-mem" logos in commerce first. As such, the Court finds that summary judgment as to ownership and priority of use of the "koof-mem" logos inappropriate.

 The Yanilov defendants also contend that, even if the plaintiffs own the "koof-mem" logos, the defendants' use is particular and dissimilar as a matter of law to the logos that the plaintiffs use. Thus, the next issue is whether the parties' use of the "koof-mem" logos are confusingly similar. A trademark plaintiff must prove that the alleged infringer's imitating mark

is similar enough to cause confusion or mistake or to deceive. *KP Permanent Make–Up,* 543 U.S. at 111, 125 S.Ct. 542. This "likelihood of confusion" test requires the fact finder to determine whether a reasonably prudent consumer in the marketplace is likely to be confused as to the origin or the good or service bearing one of the marks. *Dreamwerks Prod. Group, Inc. v. SKG Studio,* 142 F.3d 1127, 1129 (9th Cir.1998).

Here, the Yanilov defendants, as the moving party, failed to demonstrate to the Court that their use of the "koof-mem" logo is not similar enough to "cause confusion, or to cause mistake, or to deceive." *KP Permanent Make–Up,* 543 U.S. at 111, 125 S.Ct. 542. In fact, neither parties submitted any evidence as to consumer confusion. Accordingly, this Court finds that summary judgment on the issue of likelihood of consumer confusion inappropriate.

In summary, the Court finds triable issues of fact as to ownership of the "koof-mem" logos and whether the logos are confusingly similar.

### 5. Plaintiff's Rule 56(f) Motion

The plaintiffs contend that a continuance pursuant to Rule 56(f) for ninety days is warranted because further discovery will allow the plaintiffs to obtain evidence to defeat the Yanilov defendants' principal argument that the KRAV MAGA Marks are generic. The Court finds that the plaintiffs did not meet their burden under Rule 56(f) and denies the plaintiffs' Rule 56(f) motion for the following reasons.

First, the plaintiffs have introduced insufficient facts establishing the likelihood that controverting evidence may exist as to a material fact. *Brewer,* 935 F.2d at 1018. The material fact at issue here is whether the term "krav maga" is generic are undeserving of trademark protection in the United States.

The Yanilov defendants contend that the term "krav maga" is generic. In support of its position, the defendants submitted exhibits exceeding several hundred pages purporting to demonstrate the generic use of the term "krav maga" by the media, the industry and the relevant public.

The plaintiffs, on the other hand, argue that the term "krav maga" is distinct and deserving of trademark protection. In support of its position, the plaintiffs submitted the 1994 Admissions Letter from IKMA alleging that the letter controverts the Yanilov defendants' contention that the KRAV MAGA Marks are generic. The 1994 Admissions Letter states, in pertinent part: [IKMA] gives KMAA "the exclusive and perpetual right to use and license the name 'krav maga' and the trademark logo ('km')." The Admissions Letter is drafted and signed by IKMA, a defendant in the present action and an organization to which Yanilov personally serves as Head of Professional Committee.

In addition, the plaintiffs have submitted a declaration of Avi Moyel, manager and board member of IKMA, attesting to Yanilov's personal approval of the Admissions Letter when it was discussed and drafted by IKMA board. The Admissions Letter does not resolve the issue of whether the term "krav maga" is generic. As stated above, the test for determining whether a mark is generic is how it is understood by the consuming public. *Surgicenters,* 601 F.2d at 1015 n. 11. The plaintiffs' submissions of evidentiary support, namely the letter and the declarations concerning the circumstances surrounding the Admissions Letter, are inapposite to the issue of genericness.

The plaintiffs also contend that their inability to depose the key defendants residing in Israel also constitutes grounds for granting their Rule 56(f) motion. In order for courts to grant an opposing par-

ty's Rule 56(f) motion, facts, not conclusions, are required. *Keebler Co. v. Murray Bakery Products* 866 F.2d 1386, 1389 (Fed.Cir.1989). Under Rule 56(f), an opposing party must make clear what information is sought and how it would preclude summary judgment. *Garrett v. City and County of San Francisco,* 818 F.2d 1515, 1518 (9th Cir.1987).

Here, the plaintiffs failed to make clear what facts they intend to elicit from the seven Israeli declarants or how such facts would help the plaintiffs survive summary judgment on the issue of genericness. As stated above, whether a mark is generic is determined by the perceptions of the consuming public. *Surgicenters,* 601 F.2d at 1015 n. 11. The plaintiffs have not demonstrated to the Court how the Israeli declarants would address consuming public perceptions. As such, the plaintiffs failed to present any, let alone sufficient, facts establishing the likelihood that controverting evidence exists as to the issue of the mark's genericness.

Second, the plaintiffs do not present specific and compelling reasons as to why such controverting evidence, if any, cannot be presented at the present time. The Yanilov defendants' motion for summary judgment is supported by eleven declarations, seven of which are by Israeli citizens residing in Israel. The plaintiffs nakedly assert that they have not had the opportunity to depose any of the declarants but do not provide any justification or rationale for its delay. The Court's cursory review of this case's history indicates that KMAA filed the instant lawsuit over a year ago. Additionally, there was a significant break between April 11, 2006, and August 2, 2006, where no papers were filed by either party. The plaintiffs' failure to demonstrate *any* compelling reason as to why they could not depose key defendants since the filing of this lawsuit in October 2005,

weighs heavily against their Rule 56(f) motion.

Third, the plaintiffs fail to demonstrate to the Court what steps or procedures they intend to utilize to obtain evidence supporting the nongenericness of the term "krav maga." In fact, the plaintiffs do not even address this issue in their Rule 56(f) motion. To prevail under Rule 56(f), a party opposing a motion for summary judgment must make clear what information is sought and how it would preclude summary judgment. *Hall,* 791 F.2d at 761. The plaintiffs did not meet this burden.

### 6. Plaintiff's Supplemental Declaration in Support of Rule 56(f) Motion

On November 20, 2006, this Court heard oral argument on the defendants' motion for summary judgment and the plaintiffs' Rule 56(f) motion to continue summary judgment. This hearing was scheduled on October 20, 2006, when the defendants filed their motion for summary judgment. On November 21, 2006, the day after the hearing, the plaintiffs filed a Supplemental Declaration in support of their Rule 56(f) motion. For the following reasons, this Court finds that the declaration is untimely. Furthermore, even if the declaration were not untimely, the arguments it raises are not persuasive and this Court denies the plaintiffs' Rule 56(f) motion.

### A. Untimeliness

 The present action was filed on October 4, 2005. (Obj. to Supp. Dec. ¶ II(B).) Between December 13, 2005, and January 4, 2006, the defendants filed their Answers, which, in part, raised genericness as an affirmative defense. (*Id.*) On February 10, 2006, pursuant to Federal Rule of Civil Procedure 26(f), the parties met regarding discovery in the case. (*Id.*) At this time the plaintiffs were permitted to begin discovery. (*Id.*) Now, almost one

year after the plaintiffs were put on notice that genericness would be a critical component of this case, the plaintiffs have filed a declaration asserting the need for further time to conduct discovery on the genericness of "krav maga." This request is especially troubling given that it was made one day after this Court heard argument on the defendants' motion for summary judgment and the plaintiffs' Rule 56(f) motion. As the plaintiffs' failed to diligently pursue previous discovery opportunities, this Court finds that its declaration, filed after the Rule 56(f) hearing was held, is untimely.

A district court may, within its discretion, deny a Rule 56(f) motion for further discovery if the moving party failed to "diligently pursue[ ] its *previous* discovery opportunities," *Qualls v. Blue Cross of California*, 22 F.3d 839, 844 (9th Cir.1994) (emphasis in original); *see also Nidds v. Schindler Elevator Corp.* 113 F.3d 912, 921 (9th Cir.1996) (holding that "the district court does not abuse its discretion by denying further discovery if the movant has failed diligently to pursue discovery in the past"); *Mackey v. Pioneer National Bank*, 867 F.2d 520, 524 (9th Cir.1989) (stating a "[Rule 56(f) ] movant cannot complain if it fails diligently to pursue discovery before summary judgment").

In the present case, the plaintiffs have had more than ample time to conduct discovery. Even with this time, however, the plaintiffs have submitted only five declarations in opposition to the defendants' motion for summary judgment. As noted above, these declarations are from KMAA's former students, a licensee of KMAA, and an advertising director of a publication in which KMAA advertises. Aside from these declarations, the plaintiffs have submitted no discovery in support of their Rule 56(f) motion. Accordingly, the plaintiffs' failure to diligently pursue prior discovery in addition to the

submission of their declaration *after* the hearing warrant a denial of the Rule 56(f) motion.

### B. Merits of Plaintiffs' Supplemental Declaration

■ Even if this Court were to accept the plaintiffs' supplemental declaration and the arguments contained therein, the plaintiffs have failed to carry the necessary burden in order to prevail on their Rule 56(f) motion. "The burden [in a Rule 56(f) motion] is on the party seeking additional discovery to proffer sufficient facts to show that the evidence sought exists ... and that it would prevent summary judgment." *Nidds v. Schindler Elevator Corp.*, 113 F.3d 912, 921 (9th Cir.1996) (internal citation omitted). In the present case, the discovery sought by the plaintiffs would not prevent summary judgment.

In the declaration filed after the November 20 hearing, the plaintiffs state that they require additional time to research and present evidence to demonstrate that (1) "prior to [the] Plaintiff's use of the mark, there was no generic use of the term KRAV MAGA in the United States," (Supp.Decl.¶ 4); (2) after the plaintiffs' use of the mark, evidence exists to "counter examples of [generic] use of the KRAV MAGA mark produced by Defendants;" (*id.*) and (3) to demonstrate, through public opinion surveys, that the general public associates krav maga with the plaintiffs. (*Id.* ¶ 7.)

The plaintiffs' first argument in support of the Rule 56(f) motion would not be sufficient to prevent summary judgment. To begin, the plaintiffs have proffered no facts to show that such evidence even exists other that to state that the plaintiffs will research "four daily newspapers ... as well as periodicals such as Time Magazine and Reader's Digest." (*Id.* ¶ 4.) That the plaintiffs might be able to demonstrate

that, prior to the plaintiffs' use of the term in the United States, the term "krav maga" was rarely used by these four newspapers and two magazines would fall far short of the burden required to prevent summary judgment.

The plaintiffs' second argument is equally unpersuasive. The plaintiffs argue that they need more time to research and present examples from similar publications as their first argument, but for the time period after which the plaintiffs began developing their business in the United States. The defendants, however, have presented approximately 620 pages of exhibits demonstrating generic use of the term "krav maga" generated by an electronic search using the Thompson directory. That the plaintiffs might now submit some evidence countering some of the defendants' exhibits would not be sufficient to prevent summary judgment.

Finally, the plaintiffs argue that they need more time to conduct public surveys in order to demonstrate that the general public does not understand the term krav maga to be generic. Even if the plaintiffs were able to present such survey evidence, however, it would not be sufficient to prevent summary judgment. Such evidence would only show that "consumers had come to associate the term with the plaintiffs," *Schwan's IP v. Kraft Pizza Co.*, 460 F.3d 971, 976 (8th Cir.2006) (internal citations omitted), and "not show that a generic term had become protectible." *Id.* Obviously, in the present case the dispute revolves around whether the term krav maga is generic. Nonetheless, it is undisputed that the term was created in 1948 and that the plaintiffs had no relation to either the creation or development of the term. Evidence from a public survey, as proffered by the plaintiffs, would merely show that the plaintiffs were successful in developing and growing their business. It does not prove that the term itself is not generic or that the relevant consuming public associates the term "krav maga" solely with KMAA. Accordingly, a public survey, at this juncture, would not prevent summary judgment.

For the foregoing reasons, this Court finds that the Supplemental Declaration is untimely, and, in the alternative, the arguments raised therein are without merit. Under either analysis, the motion for a continuance under Rule 56(f) is denied.

## III. CONCLUSION

For the foregoing reasons, this Court grants in part and denies in part the Yanilov defendants' motion for summary judgment and denies the plaintiffs' Rule 56(f) motion to continue the motion for summary judgment.

IT IS SO ORDERED.